[Postal Telegraph Cable Co. v. Jones.]

# Postal Telegraph Cable Co. v. Jones.

*Action against Telegraph Company to recover Damages for Personal Injuries.*

1. *Action against telegraph company for personal injuries; sufficiency of complaint.*—In an action against a telegraph company by one who was traveling along the public highway, to recover damages for personal injuries received as the result of a wire used by the defendant having fallen across the public road, where the complaint alleges that the team which was attached to the vehicle in which he was riding, came in contact with said wire, and by reason thereof became unmanageable and the plaintiff was thrown from the wagon and fell upon said wire and received the injuries complained of, and it was averred that the defendant owned and operated said telegraph wire which was heavily charged with electricity "and it became and was the duty of the defendant to use due care to have and keep said wire high up from said road, yet, notwithstanding said duty defendant negligently caused or allowed said wire to be or remain on, or such a short distance above, said public highway that the public traveling said highway were liable to be injured thereby," sufficiently charges a cause of action and is not subject to demurrer upon that ground, or upon the further ground that it fails to show the duty on the part of the defendant to keep its wire out of the way of travelers along the public road.

2. *Pleading and practice; when demurrer to special pleas properly sustained.*—Special pleas which set up matters simply in denial of the cause of action, as contained in the complaint, and interpose no ground of defense which can not be set up under the plea of the general issue, are subject to demurrer.

3. *Action against telegraph company; when negligence a question for the jury.*—In an action by one who was traveling along a public road against a telegraph company, to recover for personal injuries alleged to have been caused by reason of the defendant's negligence in allowing a wire charged with electricity to be or remain on or a short distance above the road, whereby the traveling public along said road were liable to be injured, and the defendant by special plea sets up

[Postal Telegraph Cable Co. v. Jones.]

that it exercised reasonable care to prevent its wires from becoming detached from its poles, and that it did not know and by the exercise of reasonable care could not have known that the wires had become detached from the pole, until after the injury to the plaintiff, and where the evidence for the plaintiff tends to show that at the point where the injury was alleged to have been caused the wire owned and operated by the defendant had become disengaged from the pole to which it was attached, by reason of the cross pole being rotten, and that the wire had been detached for two days or more before the injury complained of was inflicted, it is a question for the jury whether due care alleged had been proved, or whether due care had been exercised to discover and remedy the defective condition of the wire; and, therefore, the general affirmative charge requested by the defndant is properly refused.

4. *Same; same; charge to the jury.*—In such a case, a charge is properly refused which instructs the jury as follows: "That although the jury may find from the evidence that the cross arm which it appears from the evidence was detached from the pole at the point of defendant's line where the alleged injury occurred was rotten, or partially rotten, yet, in this case no recovery can be had because of such alleged rotten or partially rotten cross arm."

5. *Action for negligence; charge of court as to failure to call in physician.*—In an action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant, a charge is erroneous and properly refused which instructs the jury "that if they find from the evidence that no doctor was employed by the plaintiff to treat his alleged injuries, the jury may look to this fact, if found from the evidence to be a fact, as a circumstance tending to show that plaintiff was not seriously hurt at the time and place named in the complaint and evidence."

6. *Action to recover for personal injuries; admissibility of evidence.* In an action to recover damages for personal injuries, where there was evidence tending to show that the plaintiff continued to suffer more or less from the injury ever since it was received, it is competent to ask a witness who was shown to have been with the plaintiff, as to whether or not he had heard the plaintiff give expressions of pain or suffering since he received the injuries complained of.

7. *Action against telegraph company; inconsistency of court in rulings upon charges requested by defendant.*—In an action by one who was traveling along a public road against a

telegraph company, to recover for personal injuires alleged
to have been caused by reason of the defendant's negligence
in allowing a wire charged with electricity to be or remain
on or a short distance above the road, whereby the traveling
public along said road were liable to be injured, there is
no inconsistency on the part of the trial court in giving a
charge at the request of the defendant which left the jury
free to find that the wires, poles and cross arms of defend-
ant's line were not in safe and good condition when they
were last inspected, and upon so finding to return a verdict
for the plaintiff, and refusing at the request of the defend-
ant the general affirmative charge in its behalf.

8. *Trial and its incidents; new trial can not be granted because*
*court gave charge at the request of movant.*—Where in the
trial of a cause, there is judgment rendered for the plaintiff,
it constitutes no ground for the granting of a new trial, that
the court at the request of the defendant gave a charge in
its behalf.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. A. A. COLEMAN.

This was an action brought by the appellee, C. A.
Jones, against the Postal Telegraph Cable Company to
recover damages for personal injuries received by him
while travelling along a public highway, by the side of
which the defendant had its wires strung.

The complaint as amended contained but one count.
In this count the plaintiff alleged that on November 5,
1898, the defendant owned and operated a line of tele-
graph wire which was attached to poles along or near
the public highway in Jefferson county; that said line
of telegraph wire was heavily charged with electricity,
"and it became and was the duty of defendant to use
due care to have and keep said wire high up from said
road, yet notwithstanding said duty defendant negli-
gently caused or allowed said wire to be or remain on,
or such a short distance above, said public highway,
that the public traveling said highway were liable to be
injured thereby." It was then averred that on the day
above named the plaintiff was traveling along said high-
way in a wagon to which a team was attached, and that
said team came in contact with the said wire and as a
proximate consequence thereof the team became un-
manageable and plaintiff was thrown from the wagon,

and came in contact with the wire charged with electricity, and sustained the damages complained of. The plaintiff claimed $500 as damages.

To this complaint the defendant demurred upon the following grounds: 1. It fails to aver any duty that the defendant owed to the plaintiff in the manner of maintaining its wires. 2. That the complaint fails to show that the defendant did not discharge its duty to the plaintiff. 3. The complaint fails to show with reasonable certainty in what the alleged negligence of the defendant consisted. 4. It fails to aver what, if any, negligence on the part of the defendant contributed proximately to plaintiff's alleged injuries. This demurrer was overruled. Thereupon the plaintiff filed the pleas of the general issue and the following special pleas: "4. For further answer to the complaint the defendant says and avers that the plaintiff ought not to have and recover any sum of this defendant in this cause because, as it avers, neither the defendant nor the employees of defendant, whose duty it was to see that its wires at the point named in the complaint were properly attached to the poles, knew that said wires were detached from said poles in the manner stated in the complaint until after the alleged injury to paintiff, when, as defendant avers, the defendant within a reasonable time thereafter caused said wires to be properly attached to said poles."

"5. For answer to the complaint the defendant says and avers that the plaintiff ought not to have and recover any sum of this defendant in this cause because, as it avers, neither the defendant nor the employees of the defendant, whose duty it was to see that its wires at the point named in this complaint were properly attached to the poles, knew, or by the exercise of reasonable care would have known, that said wires were detached from said poles in the manner stated in the complaint until after the alleged injury to plaintiff, when, as defendant avers, the defendant within a reasonable time thereafter, caused said wires to be properly attached to said poles."

"6. For further plea in this behalf the defendant says and avers that plaintiff ought not to have and recover

of this defendant any sum because it says and avers that
the plaintiff contributed to his own injury in this, that
knowing the wire referred to in the complaint was
alongside of the alleged road, he, without due care,
drove or allowed to be driven the alleged team against
said wire, thereby contributing to his alleged injuries."

"7. For further answer to the complaint the defend-
ant says and avers that the plaintiff ought not to have
and recover any sum of this defendant in this cause be-
cause, as it avers, that the defendant exercised reason-
able care to prevent its said wires from becoming de-
tached from its said poles, and that neither the defend-
ant or the employees of the defendant, whose duty it
was to see that its wires at the point named in this
complaint were properly attached to the poles, knew,
or by the exercise of reasonable care would have known,
that said wires were detached from said poles in the
manner stated in the complaint until after the alleged
injury to plaintiff, when, as defendant avers, the de-
fendant within a reasonable time thereafter caused said
wires to be properly attached to said poles."

To pleas 4 and 5 the plaintiff demurred upon the fol-
lowing grounds: 1. Said pleas do not interpose any
defense which could not be set up under the
plea of the general issue; and the facts averred
in said pleas can be given in evidence under
the general issue. 2. Said pleas fail to nega-
tive the negligence of the defendant in allowing the
wire to be along or near the public road. The de-
murrer to each of these pleas was sustained. The judg-
ment entry recites that there was a motion made to
strike the 7th plea from the file. The grounds of this
motion are not shown. Said motion, however, was over-
ruled.

On the trial of the cause upon issue joined upon the
remaining pleas, it was shown that on the night of No-
vember 5, 1898, the plaintiff in company with two other
men was riding along a public road in Jefferson county
in a wagon drawn by a horse and a mule; that when
they were about thirteen miles from the city of Bir-
mingham the team came in contact with a wire which
was swinging about two feet from the ground in the

middle of said road; that this wire was charged with electricity and the shock therefrom caused the team to rear and charge; that the wagon was broken, the occupants thereof thrown out, and the plaintiff fell on the wire and the body of the wagon fell upon him; that this wire was owned, operated and maintained by the defendant.

The evidence for the plaintiff tended to show that on the day before, while plaintiff and his companions were going along the same road in the direction of Birmingham the defendant's wire at the point on the road where the injury had occurred, had dropped from the cross arm of the post from which it was suspended, and was propped out of the road with a forked stick; that the cross arm by which the said wire was suspended from the post, was rotten and broken.

The evidence for the plaintiff further tended to show that the plaintiff's injuries were permanent in their character, and that the plaintiff had suffered a great deal and was rendered less able to work.

During the examination of one Lawler, who was with the plaintiff at the time of the accident, he was asked the following question: "Have you or not heard Jones, the plaintiff, give expressions of pain or suffering since that night?" To this question the defendant objected. The court overruled the objection, and the defendant duly excepted.

The defendant, as a witness in his own behalf, testified in detail to the injuries sustained by him, and further testified that he did not have a doctor to attend him.

The evidence for the defendant tended to show that the line along which the wire was running was maintained in good condition, and was of such material as was in use in well regulated telegraph lines; that said line had been inspected by a competent lineman on October 14, 1898, just a short time before the accident, and that it was then found to be in good condition.

One of the witnesses for the defendant, and who testified that he was the wire chief of the defendant, whose place of business was in Birmingham, further testified that by a system used by the defendant the wire chief

could tell as soon as a wire was obstructed, and was enabled by the use of an instrument called a galmanometer to approximate the distance from the office in Birmingham to the place of obstruction; that up to the time this witness went off duty at 4 o'clock November 5, 1898, nothing had interrupted the wire along the line where the accident occurred. Another witness, who testified that he was the night wire chief, testified that about 9 o'clock on the night of November 5, 1898, the instrument referred to indicated that there was an obstruction along the road on which the plaintiff was injured, about thirteen miles from Birmingham. The evidence for the defendant further tended to show that the next morning a line man was sent to the place in question and found that the wire had dropped from the post, but was propped up from the road by a forked stick. Two of the witnesses introduced for the defendant testified that the cross arm on which the wire was suspended from the post was not rotten or broken.

The evidence for the defendant further tended to show that the current of electricity along the wire which was alleged to have caused the injury complained of was not of sufficient force to be dangerous.

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The court charges the jury that if the jury believe the evidence introduced in behalf of the defendant, they must find for the Postal Telegraph Cable Co." (2.) "The court charges the jury that if they believe the evidence, they must find a verdict in favor of the defendant, the Postal Telegraph Cable Co." (3.) "The court charges the jury that although the jury may find from the evidence that the cross arm which it appears from the evidence was detached from the pole at the point of defendant's line where the alleged injury occurred was rotten, or partially rotten, yet, in this case, no recovery can be had because of such alleged rotten cross arm." (4.) "The court charges the jury that if they find from the evidence that no doctor was employed by the plaintiff to treat his alleged injuries, the jury may look to this fact, if found from the evidence to

be a fact. as a circumstance tending to show that plaintiff was not seriously hurt at the time and place named in the complaint and evidence."

The court, at the request of the defendant, gave to the jury, among others, the following written charge: (10.) "The court charges the jury that if they believe from the evidence that it is the custom of well regulated telegraph companies to inspect the lines of such companies once a month; and if the jury further find from the evidence that the line which included the point where the alleged injury occurred had been inspected by a competent man on the 13th of October, 1898, and if the jury further find from the evidence that at the time of said inspection, provided they find there was such inspection by such man, the wires, poles and cross arms were in good and safe condition and such as were and are used by well regulated telegraph companies and if the jury further find that the defendant, the telegraph company, did not know the line was down until or after the alleged injury to plaintiff and that it was repaired the next morning, and if the jury further find from the evidence that the defendant used the ordinary and usual and reasonable care of well regulated telegraph companies in ascertaining whether the line in question was down, then the verdict should be for the defendant, the Postal Telegraph Company."

There were verdict and judgment in favor of the plaintiff, assessing his damages at $250. After the rendition of this judgment the defendant moved the court to set aside the verdict and judgment and grant a new trial upon the ground that the court erred in refusing to give the several charges requested by the defendant; because the verdict was contrary to the law and the evidence; because the court erred in its ruling upon the pleadings, and upon the following ground: "8. The court by giving to the jury charge No. 10 at the request of defendant held on the evidence that the plaintiff was not entitled to recover yet refused to give charge No. 2, which respective actions of the court operated to the injury of the defendant on the trial and will operate to injury of the defendant on appeal." This motion was overruled, and the defendant duly excepted.

The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

J. J. ALTMAN, for appellant.

BOWMAN & HARSH, *contra.*—The court did not err in its rulings upon the pleadings.—*L. & N. R. R. Co. v. Marbury L. Co.,* 125 Ala. 237; *L. & N. R. R. Co. v. Jones,* 83 Ala. 376; *Laughran v. Brewer,* 113 Ala. 515.

Demurrers to the fourth and fifth pleas are plainly well taken. These two pleas are but the efforts to make up a defense out of some but not all of the materials in the general issue. In other words, they negative only a part of the negligence alleged. For duty of defendant in reference to wires across highways, see *Newark Elec. L. & P. Co. v. Ruddy,* 5 Am. Neg. Rep. 402; *Lloyd v. City & Suburban Ry.,* 7 Am. Neg. Rep. 591; Keasbey on Electric Wires (2d ed.), §§ 227 and 231; *Dickey v. Maine Tel Co.,* 46 Me. 483; *Thomas v. Western Union Tel. Co.,* 100 Mass. 156; *Penn. Telephone Co. v. Varman,* 15 Atl. Rep. 624; *Nichols v. City of Minneapolis et al.,* 33 Minn. 430; *Chatta. Elec. Co. v. Mingle,* 56 S. W. Rep. 23.

The charge requested by the defendant was properly refused. If a sound cross arm is one of the appliances used by defendant to hold its wires out of the highway, then having a rotten and ineffective cross arm was one way of causing or allowing the wire to be in the highway and is fully covered by the complaint. The *quo modo* of defendant's negligence is not necessary to be stated.—*L. & N. R. R. Co. v. Jones,* 83 Ala. 376; *Rowe v. N. Y. & N. J. Tel. Co.,* 9 Am. Neg. Rep. 528; *Leach et al. v. Bush et al.,* 57 Ala. 154; *Mary Lee Coal & Ry. Co. v. Chambliss,* 92 Ala. 172; *L. & N. R. R. Co. v. Hawkins,* 92 Aa. 243; *L. & N. R. R. Co. v. Mothershed,* 12 So. Rep. 714.

McCLELLAN, C. J.—There is no merit in the contention for appellant that the complaint did not aver the negligence counted on with sufficient particularity. The rule is that the duty to exercise care being shown, the failure to perform that duty, the negligence causing

15c

the injuries complained of may be well averred in the most general terms, little if at all short of the mere conclusions of the pleader; and this upon the entirely sufficient consideration, among others, that if the defendant has been guilty of negligence he knows as well as or better than the plaintiff can in what that negligence consisted.—*Louisville & Nashville Railroad Co. v. Jones,* 83 Ala. 376; *Louisville & Nashville Railroad Co. v. Marbury Lumber Co.,* 125 Ala. 237; *Mobile & Ohio Railroad Co. v. George,* 94 Ala. 214; *Bessemer Land & Imp't Co. v. Campbell,* 121 Ala. 50; *Montgomery Street Railroad Co. v. Armstrong,* 123 Ala. 233; *Ga. Pac. R'y Co. v. Davis,* 92 Ala. 307; *Stanton v. Louisville & Nashville Railroad Co.,* 91 Ala. 384; *Ensley Railroad Co. v. Chewning,* 93 Ala. 26; *Laughran v. Brewer,* 113 Ala. 509; *Louisville & Nashville Railroad Co. v. Orr,* 121 Ala. 489; *Memphis & Charleston Railroad Co. v. Martin,* 117 Ala. 367, and many other cases.

The objection taken by demurrer that the complaint does not sufficiently show a duty on the part of the defendant to keep its wires out of the way of travelers along public roads is too palpably unfounded to require discussion. The complaint does aver such duty, and the courts take cognizance of it even without averment. In this respect the case is analogous to that of *Louisville & Nashville Railroad Co. v. Marbury Lumber Co., supra,* in which the complaint averred that the defendant negligently set fire to and burned plaintiff's cotton. We know in this case that it was defendant's duty to exercise care to avoid obstructing public roads, as we knew in that it was defendant's duty to exercise care to avoid burning plaintiff's cotton.

All the facts averred in pleas 4, 5 and 7 were provable under the general issue: The averments of these pleas were mere denials of negligence; and on this ground the appellant can take nothing by reason of the court having sustained the demurrer to those numbered 4 and 5. Both those and plea 7 might well have been stricken on the ground referred to.

Plea 7 was allowed to remain in the case, however, and appellant's counsel insist that it was proved on the trial. We do not find that it was proved. The plea

alleges that the defendant used due care to prevent its wires from becoming detached from its poles. The evidence for plaintiff was that the wires at the point they fell and obstructed the highway had been attached to the pole from which they became disengaged, by means of a rotten cross bar, etc. On this evidence it was clearly a question for the jury whether the due care alleged had been proved. The plea also alleges that the defendant did not know and by the exercise of reasonable care could not have known that the wires had become detached from the pole until after the injury to plaintiff, but the evidence for the plaintiff showed that the wires had been detached for more than two days before the injury was inflicted, and it was open to the jury to say upon this evidence that due care had not been exercised to discover and remedy the defective condition of the wires. Something is said in the case about an instrument in use in defendant's offices by the use of which trouble with the wires may be detected and located. We do not understand that this instrument will indicate the detachment of a wire from a pole and its consequent suspension in the way of travelers across a public road, or will indicate anything at all so long as the current of electricity carried by the wire is not obstructed. It indicated nothing in this case until the current was diverted from the wire in consequence of plaintiff's wagon and team and person coming in contact with it. The evidence about this instrument cuts no figure in respect of the injury whether defendant was negligent in allowing the wires to become detached from the pole and sag into the highway for two or three days.

What we have said in respect of the complaint applies to the third charge requested by defendant. On the evidence the jury were fully warranted in finding that the cross arm was rotten, that it was so rotten, or, being rotten, was used by defendant in consequence of its, defendant's, negligence, and that such negligence in respect of the cross arm was the efficient cause of plaintiff's injury, entitling him to a verdict.

There being not only the evidence as to the rottenness of the cross arm from which damnifying negligence was inferable by the jury; but also evidence that the

wires had been down two or more days before the injury from which it was open to the jury to infer such negligence, and there being also evidence of the alleged injury, it requires no argument to demonstrate that the affirmative charge requested by defendant was properly refused.

It becomes necessary to remark only, because the contrary is insisted upon, that a charge to the jury "that if they find from the evidence that no doctor was employed by the plaintiff to treat his alleged injuries, the jury may look to this fact, if found from the evidence to be a fact, as a circumstance tending to show that the plaintiff was not seriously hurt," is such a singling out and giving undue prominence to a part of the evidence as is unwarranted and has been over and over again condemned by this court.

The evidence tended to show that the plaintiff had continued to suffer more or less from the injury ever since it was received. The question to the witness Lawler: "Have you not heard the plaintiff give expressions of pain and suffering since that night," covered the time under inquiry, and was not objectionable.

There was no inconsistency on the part of the circuit court in giving charge 10 for defendant and refusing the general charge asked by defendant. The jury were left free by this 10th charge to find that the wires, poles and cross arms of defendant's line were not in good and safe condition when Worthy last inspected the line, and upon that to return a verdict for the plaintiff, while all this would have been denied them by the affirmative charge. This matter is made a ground of the motion for a new trial, and is the only ground of that motion specially insisted upon by counsel. The contention in this connection is not that the court should have granted a new trial for having erroneously refused to give the general charge for defendant—that is another ground of the motion—but that a new trial should be granted to defendant because the court gave charge 10 at its request. We confess we do not see how the defendant can ask a new trial on the ground that the court in a specified instance ruled at his request in his favor.

We do not understand that any of the other grounds of the motion for a new trial, except such as we have above considered apart from that motion, are insisted on. Whether so or not, they are without merit.

Affirmed.