# Sheffield Co. v. Morton.

## Damages for Death.

(Decided May 20, 1909. 49 South. 772.)

1. *Pleading; Construction; General Allegation.*—The general allegations in a complaint are controlled by its specific allegations, and an allegation that a place was a public place cannot be construed to mean a place public in the sense that it was the property of the public or that the public had the right to go upon it, where there is a further specific averment that it was an uninclosed lot or com-

mon where people in large numbers were frequently in the habit of going.

2. *Electricity; Uninsulated Wires; Negligence.*—To maintain in a public place and so close to the ground that persons passing might come in contact with, an uninsulated wire, charged with a dangerously high current of electricity is negligence.

3. *Same.*—In determining what precautions were reasonably necessary to be taken by an electric company maintaining high voltage service wires on the lands of another, the company is held to have considered the known extent and nature of the use to which the place was customarily put by others than its owner, and the known likelihood of the peril to children known to resort there will raise the duty of the exercise of reasonable care for their safety regardless of the nature of the place itself.

4. *Same; Duty to Protect Wires.*—Where an electric company maintains high voltage wires on a bluff, out of reach of persons resorting to the neighboring level places in an ordinary and rational way, it was not liable for the death of a boy who came in contact with the wires by climbing into a position of difficulty on the bluff, a position obviously dangerous independent of the wires, since the company cannot be held to have anticipated that persons would go into a place of obvious danger.

5. *Same; Trespasses.*—Where an electric company had strung its wires on a bluff over land of which it was not the owner, but by the implied license of the owner, it could not consider as a trespasser, persons going upon the bluff on an unenclosed lot or common frequented in large numbers by the public.

6. *Same; Death Action; Pleading.*—In an action for death by coming in contact with a high voltage electric wire, an allegation that the defendant had a right to go where he was when he was killed, although general, was sufficient to raise the duty on the part of the electric company to care for the safety of the deceased in its maintenance of dangerous wires at the place where he was when killed.

7. *Same; Evidence.*—The evidence in this case stated and examined and held not to show that there was such a customary resort by the public generally, or by children to a bluff where the wires were maintained so known to the electric company, as to devolve upon the company, the duty to protect the wire.

8. *Negligence; Nature and Elements.*—Every theory of negligence involves the inquiry whether some one did or failed to do what a reasonably prudent and careful man would be expected to do under the given circumstances.

APPEAL from Colbert Circuit Court.

Heard before Hon. D. W. SPEAKE.

Death action by Lizzie C. Morton, administratrix, against the Sheffield Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The facts sufficiently appear in the opinion of the court. There were a number of counts in the complaint, all of which were eliminated except counts 3 and 5.

Count 3 was as follows: "Plaintiff claims of the defendant the further sum of $20,000 damages, for that, whereas, heretofore, to wit, on the 24th day of December, 1904, the defendant was maintaining and operating an electric wire from Sheffield, to and through the city of Tuscumbia, Ala.; that in a public place in the western part of said city of Tuscumbia, Ala., said wire was maintained a few feet above the ground near a bluff and at a point between Fifth and Sixth streets, within easy reach of pedestrians going on said bluff, where children were in the habit of going. And plaintiff alleges that said bluff, which was a public place, was an uninclosed lot or common, where people in large numbers were frequently in the habit of going, facts known to the defendant; that on said date plaintiff's intestate, an infant of the age of 10 years, went on said bluff, and while there came in contact with said wire, which was charged with a high and dangerous voltage of electricity and uninsulated; that defendant with knowledge that said wire was within easy reach of pedestrians going to and on said bluff, and, knowing said wire was charged with electricity and was uninsulated, and that it was dangerous for persons to come in contact with, permitted said wire to remain within a few feet of the ground, in easy reach of children. And plaintiff avers that by reason of said wire being maintained as above stated plaintiff's intestate came in contact with the wire and the current of electricity, which caused him to fall to the ground at the base of the bluff, whereby he received great injury, to-wit, his skull was crushed, and his body otherwise bruised, from which injuries he died on the 25th day of December, 1904."

Count 5: "Plaintiff claims of the defendant the further sum of $20,000 damages, for that, whereas, heretofore, on, to-wit, the 24th day of December, 1904, defendant was engaged in furnishing electric lights for the city of Tuscumbia, Ala., and the inhabitants of said city, by electricity conveyed to and through said city by means of wires erected and maintained by defendants on poles in a populated portion of the city, to-wit, between Fifth and Sixth streets, at a public place, near the western boundary of said city, one of defendant's wires was so constructed and maintained at said point near the edge of a bluff within easy reach of pedestrians going on or near the bluff. And plaintiff avers that said wire was charged with a high degree of electricity, dangerous to the life of a person coming in contact therewith, and was uninsulated; that on said date plaintiff's intestate was on the bluff, where he had the right to go, and came in contact with said wire by inadvertently placing his hands on the said wire, by which he received a shock and was thrown to the ground, whereby he received great injuries, from which he died on the 25th day of December, 1904. And plaintiff avers that the maintaining of the said wire at the point stated, within easy reach of pedestrians, said wire being heavily charged with electricity and uninsulated, was negligence which proximately contributed to intestate's death."

The demurrers to these counts raise the propositions discussed in the opinion, and are not necessary to be here set out.

ALMON & ANDREW., for appellant.—It must affirmatively appear that the deceased was not a trespasser at the time of the injury as only simple negligence is charged.—*G. A. & U. Ry. Co. v. Julian,* 133 Ala. 371; *Annston E. & G. Co. v. Elrod,* 144 Ala. 317. There

[Sheffield v. Morton.]

can be no recovery unless there has been a breach of duty.—*Jefferson v. Birmingham,* 116 Ala. 294. A company is no more bound to keep its premises safe for children who are trespassers or bare licensees uninvited or unenticed by it, than to keep it safe for adults.—*A. G. S. v. Mutch,* 97 Ala. 194; *A. G. S. v. Moorer,* 116 Ala. 642; Authorities supra. No license is acquired by the public from an unauthorized user.—*G. & A. U. Ry. Co. v. Juian,* supra; *McAuley v. T. C. I. & R. R. Co.,* 93 Ala. 356; 23 A. & E. Ency. of Law, 739. The case at bar is covered by the principles decided in the following cases.—*Side's Case,* 129 Ala. 399; *Thompson's Case,* 77 Ala. 448. The defendant was entitlel to the affirmative charge.—*Elyton Co. v. S. & N. R. R. Co.,* 95 Ala. 631; *T. C. R. R. Co. v. East Lake,* 75 Ala. 516; *Haley v. K. C. M. & B. R. R. Co.,* 113 Ala. 640; 119 Ala. 105; *Side's case, supra; Thompson's case, supra; Pratt C. & I. Co. v. Davis,* 79 Ala. 568; 95 Mich. 62. Counsel discuss motion for new trial not necessary to be here briefed.

KIRK, CARMICHAEL & RATHER, for appellee.—The only counts to be considered on this appeal are counts three and five; demurrers were sustained to the other counts with the exception of count six against which the court gave the affirmative charge. Count three is good.—The averments alleged therein are sufficient and constitute a good cause of action.—*Postal Tel. & Cable Co. v. Jones,* 133 Ala. 217; Joyce on Elec. Laws, Sec. 445, page 445; *Newark Electric L. & P. Co. v. Ruddy,* 5 Am. Neg. Rep. 402; 5th Mayfield, p. 711, Sec. 26; *L. & N. R. R. Co. v. Marbury,* 125 Ala. 237; 8th Am. & Eng. Ency. of L., p. 568; *S. W. Tel. N Tel. Co. v. Robinson,* 16 L. R. A. 546; 1st Thompson on Neg. p. 346-7; Thompson on Electricity, Sec. 78, page 115. "A company maintaining electrical wires over which a high voltage of electricity is con-

veyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have the right to go, either for work, business or pleasure, to prevent injury."— Joyce on Electric Law, p. 445, note 47; *Ennis v. Gray,* 87 Hun. (N. Y.) 355, 361; 68 N. Y. State Rep. 312; 34 N. Y. Sup. 383; 5th Am. Electric case, p. 325; *Schweizer's admr. v. City's Gen. Elec. Co.,* 52 S. W. Rep. 380. "It is the duty of the company under such conditions as above stated to keep the wires perfectly insulated and it must exercise the utmost care to maintain them in this condition at such places."—Joyce on Elec. Law, p. 445; *McLaughlin v. Louisville Elec. Co.,* 100 Ky. p. 173; 37 S. W. Rep. p. 851; 34 Lawy. Repr. Ann. 812; 5th Am. Eng. Corp. Cas. (N. S.) 167; 18th Ky. L. Rep. 693; 6th Am. Lec. Cas. 255. "Where the wire is heavily charged with electricity and is uninsulated it is negligence on the part of the company to permit it to be suspended so close to the ground as to be within easy reach of a pedestrian."—Joyce on Elec. Law, p. 445; *Suburban Elec. Co. v. Nugent,* 58 N. J. L. 658; 34 Atl. Rep. 1069; 32 Lawy. Rep. Ann. 700. "Where a duty to exercise care is shown, and failure to perform the duty, a negligence which caused the injury complained of, may be well averred in the most general language, little if at all short of mere conclusions of the pleader, and this upon the entirely sufficient consideration among others, that if the defendant has been guilty of negligence it knows as well or better than the plaintiff in what that negligence consists."—5th Mayfield, p. 714, Sec. 61 and cases there cited; *Postal Tel. & Cable Co. v. Jones,* 133 Ala. p. 226; *L. & N. R. R. v. Jones,* 83 Ala. 376, etc. The quo modo of the defendants negligence is not necessary to be stated though it is quite plainly set out in this count.—*Postal Tel. Co. v. Jones,* 133 Ala. p.

[Sheffield v. Morton.]

226; *L. & N. R. R. v. Jones,* 83 Ala. 376; *Rowe v. N. Y. & N. J. Tel. Co.,* 9 Am. Neg. Rep. p. 528; *Leach, et als. v. Bush, et als.,* 57 Ala. p. 154. . Plaintiff's intestate was not a trespasser. He was at a public place and had just as much right there, if not more, than the defendant did to erect its wires at said place. The court alleges that the place where the wire was erected and the injury occurred was a public one where people in large numbers were frequently in the habit of going, facts known to the defendant; that plaintiff's intestate, an infant of tender years, came in contact with the wire charged with a high and dangerous voltage of electricity, uninsulated and within easy reach of pedestrians, and that upon the childs hand coming in contact with the wire an electric shock was sustained which precipitated his fall and consequent death. The allegations of these facts are sufficient and the grounds of demurrer are not well taken.—*Postal Tel. & Cable Co. v. Jones,* 133 Ala. p. 217; *Nugent's case,* 32 L. R. A. p. 700; Joyce on Electric Law, Sec. 445, p. 445; *Newark L. & P. Co. v. Ruddy,* 5 Am. Neg. Rep. p. 402; 5th Mayfield, p. 711, Sec. 26; *L. & N. R. R. v. Marbury,* 125 Ala. p. 237; 8th Am. & Eng. Ency. 2nd Ed. p. 568; *S. W. T. & T. Co. v. Robinson,* 16 L. R. A. p. 546; 1st Thompson on Neg. p. 346-347; Thompson on Elec. p. 115, Sec. 78.

SAYRE, J.—This case went to the jury on counts 3 and 5 of the complaint. There can be no doubt but that, to maintain an uninsulated wire charged with a dangerous current of electricity in a public place and in such proximity to the ground that persons passing may come into contact with it, without more, constitutes negligence. "Res ipsa loquitur." In *Postal Telegraph Cable Co. v. Jones,* 133 Ala. 217, 32 South. 500, a contention that the failure to keep wires out of the way of trav-

[Sheffield v. Morton.]

elers along a public road did not show a breach of duty was pronounced to be too palpably unfounded to require discussion. But that principle is of no avail to the plaintiff, for the general allegation that the place was a public place must be controlled by the more specific allegations of facts which demonstrate its true character.

Speaking, now, more especially of count 3, we do not interpret the allegation that the place was a public place to intend that it was public in the sense that it was the property of the public, or that the public had a right to go upon it; for, if so, the allegation is insufficient to that end. The further averment is alternatively that the place was an uninclosed lot or common. The count is no stronger than its weakest alternative. In this view of the count the fact which imposed duty upon the defendant was that the lot or common was a place, to use the language of the count, "where children were in the habit of going. And plaintiff alleges that said bluff, which was a public place, was an uninclosed lot or common, where people in large numbers were frequently in the habit of going, facts known to the defendant." The defendant could not be required to anticipate that children would go where they had no right to be; still less that they were in the habit of going to such a place. Nevertheless it cannot be said as matter of law that children going upon the lot after the manner described in the count are to be treated as mere trespassers, and the defendant relieved of all duty to care for their safety. At least, it is not for the defendant, which was not itself the owner of the property, so to say and so to treat them. Under the circumstances shown in the count, plaintiff's intestate, who is alleged to have been an infant of the age of 10 years, must be treated, in our opinion, as a person upon the lot by an implied license from the owner.

[Sheffield v. Morton.]

Every theory of negligence works around to the ques-
tion whether some one did or failed to do what a rea-
sonably prudent and competent man would be expected
to do under given circumstances. In determining what
precautions were reasonably necessary and incumbent
upon the defendant in the use of its property at the place
in question, it must be held to have considered the known
extent and nature of the use.to which the place was cus-
tomarily put by others than its owner. In *Railroad
Company v. Stout,* 17 Wall. 657, 21 L. Ed. 745, common-
ly known as the first of the "turntable cases," Judge
Dillon, presiding at the trial, after defining negligence
in a manner not materially different from the general
definition already expressed herein, charged the jury in
the following language: "If the railroad company did
not know, and had no good reason to suppose, that chil-
dren would resort to the turntable to play, or did not
know, or had no good reason to suppose, that if they re-
sorted there they would be likely to get injured thereby,
then you cannot find a verdict against them. But if the
defendants did know, or had good reason to believe, un-
der the circumstances of the case, that the children of
the place would resort to the turntable to play, and that
if they did they would or might be injured, then, if they
took no means to keep the children away, and no means
to prevent accidents, they would be guilty of negligence,
and would be answerable for damages caused to children
by such negligence." That charge was held by the Su-
preme Court of the United States to be an impartial
and intelligent statement of the law, and was quoted
with approval in the later case of *Union Pacific Railway
Co. v. McDonald,* 152 U. S. 262, 14 Sup. Ct. 619, 38 L.
Ed. 434. Mr. Justice Hunt, delivering the judgment of
the court in the first-named case had to say: "So, in
looking at the remoteness of the machine from inhabited

dwellings, when it was proved to the jury that several boys from the hamlet were at play there on this occasion, and that they had been at play upon the turntable upon other occasions, and within the observation and to the knowledge of the employes of the defendant, the jury were justified in believing that children would probably resort to it, and that the defendant should have anticipated that such would be the case." In *Union Pacific Railway Co. v. McDonald, supra,* the defendant company, which operated a coal mine, was in the habit of depositing the slack on an open lot in such quantities that the slack took fire and was in a permanent state of combustion. Something having alarmed a lad of 12 years, he ran towards the slack, fell on and into it, and was badly burned. Discussing the law and the facts of that case, the court said: "It (the defendant) knew that children were in the habit of frequenting that locality and playing around the shafthouse in the immediate vicinity of the slack pit, the slightest regard for the safety of these children would have suggested that they were in danger from being so near a pit, beneath the surface of which was concealed (except when snow, wind, or rain prevailed) a mass of burning coals into which a child might accidentally fall and be burned to death. Under all the circumstances, the railroad company ought not to be heard to say that the plaintiff, a mere lad, moved by curiosity to see the mine, in the vicinity of the slack pit, was a trespasser to whom it owed no duty, or for whose protection it was under no obligation to make provision."

Keeping, then, to the case and the count in hand, we are of opinion that, whatever may have been the freedom of the defendant from obligation to care for persons of ordinary maturity or discretion at the place described in the count, the likelihood of peril to children resorting

there, known to the defendant, created the duty to care reasonably for their safety, rather than the nature of the place itself. The case of running a locomotive without warning over a path across a railroad known to be generally used by the public affords an example of negligence as against persons not infants exercising a mere privilege or license. The justice of the requirement of duty in such cases cannot be controverted.—*Haley v. Kansas City, M. & B. R. R. Co.*, 113 Ala. 640, 21 South. 357; *Alabama G. S. Ry. Co. v. Guest*, 144 Ala. 373, 39 South. 654; *Larmore v. Crown Point Iron Co.*, 101 N. Y. 391, 4 N. E. 752, 54 Am. Rep. 718. In *Alabama G. S. R. R. Co. v. Crocker*, 131 Ala. 584, 31 South. 561, a turntable case, the doctrine of *Railroad Company v. Stout, supra,* was approved. This court said: "It is the apparent probability of danger, rather than rights of property, that determines the duty and measure of care required of the author of such a contrivance; for ordinarily the duty of avoiding known danger to others may under some circumstances operate to require care for persons who may be at the place of danger without right." Count 3 of the complaint averred facts from which a duty to plaintiff's intestate arose, and a breach of it, resulting in the death of intestate, and so stated a cause of action. Count 5 alleges that plaintiff's intestate had a right to go where he was when he received his injury. This allegation is general, but is sufficient to raise a duty on the part of the defendant to care for his safety in the maintenance of dangerous wires in the place where he was. The demurrers to the counts were properly overruled.

As it appears in the evidence, the immediate place at which plaintiff's intestate is claimed to have come in contact with defendant's wire bears little resemblance to the idea of it to be gathered from the complaint. Nor

was there any such customary resort to it by children
or people generally as is alleged. It appears that the
exact point at which the plaintiff's intestate received the
shock, and the use made of it and the surrounding spa-
ces, were as follows: Fifth street, running west from
Tuscumbia, approaches a precipitous bluff. At the point
where deceased is supposed to have been, this bluff is
about 25 feet in height and shows a ragged, rocky face
to the west, looking over the open country beyond. The
street at that place is unimproved and unkept. At a
slight, convenient recess in the bluff a ladder-like stair-
way leads down to an electric car line at its base. . This
stairway was constructed for the convenience of private
parties; but the public used it in considerable number.
The poles which carry the defendant's wires for the
transmission of current between Sheffield and Tuscum-
bia stand between the bluff and the track. On the south
side of the street, between the western fence and Klopen-
stein's inclosed lot and the edge of the bluff, there is an
uninclosd lot of from 50 to 100 feet. People are accus-
tomed to pass over this lot, and a path leads around the
bluff about 15 feet from its edge. Another leads along the
street. It appears, also, that the place affords a pleas-
ant view, and that people sometimes go there to enjoy
it. The ground for 15 feet back from the bluff is rough,
uneven, and covered with boulders and stones. There
is testimony that children played on the side of the bluff
and that they had a playhouse there; but this statement
is general, and does not locate the exact place where they
played and had a playhouse. South of Fifth street, and
at the boldest point of the bluff, and on its very edge,
and several feet down from its top, there is a shelf or
table of about one square yard in area, the surface of
which inclines somewhat down towards the track of the
car line. Just back of it the rock and earth are rough

and steep. This table of rock may be approached from one side, and a person, having gone down to it, can go no further around, but must get away by retracing his steps. A number of witnesses described the location by saying that one would have to crawl or slide or lean back walking in order to get to it. A number also described the place without objection as dangerous. The approach to the spot was covered by a loose and pebbly soil. This was the point at which the wires of the defendant make their nearest approach to the bluff, and the plaintiff's theory is that her intestate, a boy alleged and proved to be about 10 years of age, was on this shelf or table when he received the shock which destroyed him by placing his hand upon the nearest wire, which, when charged, carried a current of 2,200 volts. This wire was from 3 1-2 to 4 feet above the level of the rock, and some of the evidence tended to show that it was immediately above the outer edge of the rock, while other parts of it tended to show that it was from 18 inches to 2 feet away from and behind it; but the conflict as to this we consider of no special importance, since the evidence showed with reasonable certainty that it was at a place where an adventurous boy might have reached it with his hand.

A number of photographic views of the locality, which are made a part of the bill of exceptions, accentuate and make clearer than any recapitulation of the oral testimony can the fact, which we consider of importance, in one aspect of the case, that in going to the place where, according to plaintiff's theory, her intestate came in contact with the wire, he incurred a danger which was obvious to the ordinary apprehension and which existed entirely apart from the presence there of defendant's wire. Moreover, as touching the alleged frequency of resort to the place, a number of witnesses, of long acquaintance with the locality, testified that they had

never seen any one at the point in question. The entire evidence to support the conclusion that people resorted to the point or shelf is to be found in the statement heretofore mentioned in respect to children playing and having a playhouse on the side of the bluff, and the testimony of a witness who, referring to the place "right where the wire was," used this language: "People climbed around the bluff at that place. They went there because they could see around the bottom. When you get on top, the ground is not level, and you could see better from the edge of the bluff." It was also shown that on the day before the plaintiff's intestate was killed he and another boy of about the same age were there beating upon the wire with sticks, and that "they had been going around the bluff for about a month." Deceased was found after his injury immediately below this point of rock, his skull fatally fractured, and there was evidence tending to show that he had a burn upon one hand such as would have been caused by contact with a heavily charged electric wire. There was no evidence tending to show that any officer, agent, or employe of the defendant company had ever seen children at the ledge on the side of the bluff or known of their presence there in any other way.

The plaintiff having alleged her case upon her own theory, she assumed the burden of proving it substantially as alleged. On the facts as we have stated them, that statement constituting, as we believe, a fair summary of the whole, after according to that part of it making for plaintiff's case the greatest probative force which it is entitled to receive under the rules of evidence, we are of opinion that, whatever would have been the case if the wire had been suspended over and in dangerous proximity to the level space and a person had there received injury by contact with it, it was not open to the

jury to find that there was any such customary resort of people in general or children to the place where the injury occurred, known to the defendant, as is alleged in the third count of the complaint.

Turning, now, to the evidence going to establish the fifth count, and putting aside all question whether plaintiff's intestate should be classed in any sense as a trespasser, and conceding that evidence was properly admitted to prove that the place where intestate was, when injured, was a place to which he was entitled to go, and that it was sufficient to have produced reasonable conviction of that fact in the mind of the jury, still the right of plaintiff's intestate was not the right of an owner of the soil, but a right which he enjoyed in common with the public, and not in excess of the public right. The aspect of the case now under consideration is not affected by any known habit of children to be in a dangerous place or do a dangerous thing in respect to defendant' wire. That factor is omitted in the averments of the fifth count; nor, as we have seen, is it established in the proof. The defendant, consulting the nature of intestate's right to be at the spot, and the situation and surroundings of the spot itself, and the inherent probability or improbability that any one would. go there, was no more bound in reason to anticipate that a person would come in contact with its wire at that point than that one would climb the pole upon which it was strung, or to the peak of a steep roof, or over a protecting fence, or would reach up to the wire with a rod of iron, and so or in some such way receive injury from its electric current. Indisputably the wire was entirely beyond the reach of persons resorting to the neighboring level spaces in an ordinary and rational way, and plaintiff's intestate became exposed to danger from the wire only after he had climbed into a position of diffi-

culty and one which was obviously dangerous independently of the .wire. The defendant, in the exercise of a prudence reasonable under the circumstances, was not required to anticipate that persons would go into a place of obvious danger. In *Freeman v. Brooklyn Heights R. R. Co.,* 54 App. Div. 596, 66 N. Y. Supp. 1052, the law and the facts were fairly headnoted as follows: Defendant railroad company's line was so constructed that in crossing a bridge its trolley wire and the guard wire protecting it were in close proximity to the top of the arched girder supporting the bridge. The guard wire was designed to protect the trolley wire, and was some 14 or 15 feet above the floor of the bridge, which was the passageway open to the public. In some way it became charged with electricity, and plaintiff, a boy of about 10 years, received a shock therefrom while climbing over the top of the arch, and was thrown to the floor below, fracturing his skull. Held, that the railroad company owed no duty to the plaintiff under the circumstances, and was not liable for negligence in allowing the wire to become charged with electricity, though there was evidence that boys in the neighborhood crossed the bridge by walking on the girder, as plaintiff had been doing at the time of the accident.

Our conclusion is that on the pleading and the evidence as they appear in this record it should be affirmed as matter of law that the plaintiff was not entitled to recover. It is unnecessary to consider other assignments of error.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and McCLELLAN, JJ., concur.