[No. 13793.   Department Two.   May 18, 1917.]

J. A. TALKINGTON, *Guardian etc., Respondent*, v.
WASHINGTON WATER POWER COMPANY,
*Appellant.*[1]

ELECTRICITY—INJURY TO INFANT—NEGLIGENCE—CONTRIBUTORY NEG-
LIGENCE—QUESTION FOR JURY. The negligence of a power company
in maintaining high voltage wires on the roof of a warehouse and
the contributory negligence of a boy ten years of age who came in
contact with the wires after being warned to keep away from them,
are questions for the jury, where it appears that the power line was
maintained fifteen inches above the comb of the roof, that the roof
was easily accessible to boys by means of a low lean-to with a prac-
tically flat roof, that boys were in the habit of playing on the roof,
and that the boy thought the wires were ordinary telephone wires
and there was testimony that he was not warned until the very in-
stant of the accident.

DAMAGES—PERSONAL INJURY—EXCESSIVE VERDICT. A verdict for
$5,500 for injury to a boy ten years of age, through coming in con-
tact with high voltage wires, is not so excessive as to show passion
or prejudice, where his hands were severely burned and deformed
and their usefulness permanently impaired, and he suffered great
pain for two months.

Appeal from a judgment of the superior court for Lincoln
county, Sessions, J., entered June 17, 1916, upon the verdict
of a jury rendered in favor of the plaintiff, in an action for
personal injuries sustained by a minor through contact with
an electric power line. Affirmed.

*Post, Russell, Carey & Higgins*, for appellant.
*Merritt, Lantry & Merritt*, for respondent.

PARKER, J.—The plaintiff seeks recovery of damages for
personal injuries for his ward, Willard Talkington, a minor
ten years old, claimed as the result of the negligence of the
defendant power company in maintaining the highly charged
uninsulated wires of its electric power line at a place where

[1]Reported in 165 Pac. 87.

children would be likely to come in contact therewith, and where Willard Talkington did come in contact therewith and received serious injury. Trial in the superior court for Lincoln county resulted in verdict and judgment in favor of the plaintiff, awarding damages against the defendant in the sum of $5,500, from which it has appealed to this court.

At the time in question, appellant maintained, in the town of Harrington, an electric power line carrying about 2,300 volts. This line was supported on poles in the usual manner, except where it passed over the comb of the roof of a grain warehouse belonging to a milling company, some thirty-four feet above the ground, in a northeasterly and southwesterly direction, the comb of the roof running east and west. The line passed over the comb near the center of the building. It descended somewhat from the poles to a point fifteen inches above the comb of the roof, where it was attached to a bracket as upon the poles, the warehouse and bracket thus serving the purpose of a pole. The warehouse with its lean-to was about sixty feet wide and some two hundred feet long. The lean-to ran the entire length of the south side of the building, and was some twelve feet wide. The roof on the main portion of the building had a slope of thirty-two degrees, while the roof of the lean-to had a slope of only sixteen degrees. The eaves of the lean-to, at the southwest corner, were only eight feet above the ground, while at the southeast corner they were about the height of an ordinary box car above the ground. This was because of the contour of the ground along the south side of the building. A spur track of the Great Northern Railway ran along parallel to and near the east end of the building, so that when a box car was standing on this track opposite the end of the lean-to its top was nearly level with the lower part of the roof and only thirty-two inches therefrom. Because of this, one could easily step from the roof of the car onto the roof of the lean-to. Boys of the town had been, in some degree, in the habit of playing on the roof of the lean-to, and also on the roof of the main building on that side, for some

time previous to the time Willard Talkington received his injuries, and previous to the time when appellant attached its line to the comb of the building. It is not very plain as to how frequently boys played upon the roof of the building but, in any event, it occurred several times during the period two or three years previous to the accident here involved, according to the testimony of several witnesses. The boys would gain access to the roof by climbing onto freight cars standing at the end of the lean-to and easily stepping therefrom onto the roof, it being a common occurrence for box cars to stand there. The boys would also sometimes gain access to the roof by leaning a plank from the ground up onto the eaves of the lean-to at the southwest corner, where the eaves were only eight feet from the ground.

There is no direct evidence in the record showing that appellant or any of its agents had any actual knowledge of the fact that boys played upon the roof, though plainly appellant was charged with knowledge of the surrounding physical facts relative to the accessibility of the roof. There is some evidence that boys had been directed to keep away from the warehouse by the milling company's agents. Yet a number of the boys who played upon the roof seemed to have never been so ordered to keep away. While the warehouse was not the property of appellant, it apparently was maintaining its wires upon the roof by consent of the owner. One of the things the boys did in playing upon the roof was to take off their shoes, while on the comparatively flat lean-to roof, and climb up the steeper portion of the roof to the comb. This apparently could be done with comparative ease by a boy using both his hands and feet. Yet there would be somewhat of a spirit of competition between them as to who could walk up the steeper roof without using his hands. We are not advised as to how often this occurred, but apparently about as often as boys went upon the roof to play.

At the time Willard Talkington was injured, several boys, including himself, climbed upon the roof over a box car stand-

ing at the end of the lean-to. Some had climbed up the steeper part of the roof to the comb, including Willard Talkington. He reached the comb near appellant's power line wires and, evidently while standing, he took hold of one, or possibly two, of the wires to steady himself, when he received a severe stock, grievously burning both his hands, falling unconscious, and rolling down the roof, where he was caught by another boy on the roof of the lean-to. There is some testimony indicating that Willard Talkington was warned to keep away from the wires, but there is room for argument that this warning was given him at the very instant he did so. He himself testified upon the trial that he thought they were telephone wires. What his belief was in this respect must be viewed, of course, in the light of his being only ten years old.

It is contended by counsel for appellant that, in the light of these facts, it should be absolved from negligence and that Willard Talkington should be held guilty of contributory negligence, and that the trial court erred in declining to so rule, as a matter of law, upon appellant's motions, which were timely made in that behalf. The question of appellant's negligence and Willard Talkington's contributory negligence are so intimately related that it is necessary to consider them together. It may be that appellant would be held free from negligence, as a matter of law, viewed as affecting its liability to mature persons, and yet its negligence be such as would call for the leaving of that question to the jury for decision as affecting its liability to minors of tender years. The same, in substance, may be said relative to the question of contributory negligence of a mature person as compared with the question of contributory negligence of a minor of tender years.

We are to remember that, while this power line was maintained at a place where it might be well argued mature persons would not be expected to go so as to come in contact with it, and also that its appearance would in some degree suggest danger to mature persons, it was nevertheless a very dan-

gerous, silent and even deadly agency, and one which did not display its dangers and make them so readily discernible as running machinery, high places unprotected by railings, or other similarly apparent dangers. These suggestions show the wisdom of the rule that the degree of care required of the owner of a power line highly charged with electricity to so place it that it will not come in contact with people is greater than in the placing and using of machinery and appliances which readily suggest their dangers. In *Card v. Wenatchee Valley Gas & Elec. Co.*, 77 Wash. 564, 137 Pac. 1047, we quoted with approval from Croswell on The Law Relating to Electricity, at § 234, as follows:

"The amount of care necessary varies with the danger which is incurred by negligence, for a prudent and reasonable man increases his care with the increase of danger. If but little danger is incurred, as, for instance, when the wires carry only a harmless electric current, such, for instance, as the telegraph or telephone current, only ordinary care may be required. While if the wires carry a strong and dangerous current of electricity, so that negligence will be likely to result in serious accidents, and perhaps death, or if a harmless wire is in dangerous proximity to a high tension wire, a very high degree of care, indeed, the highest that human prudence is equal to, is necessary. This is particularly true of electric light and electric railway wires, which carry a high tension current often of great danger. The rule is thus stated in a case in Massachusetts. 'The vigilance and attention required must conform to the nature of the emergency and the danger to which others may be exposed, and is always to be judged of according to the subject-matter, the danger and force of the material under the defendant's charge.'"

Having this general rule in mind, together with the fact of the tender age of Willard Talkington, the accessibility of this roof as a place for boys to play, the attractiveness of it as a place for boys to play, and the proximity to the roof of appellant's highly charged power lines, we cannot escape the conclusion that there is room for reasonable minds to reach

different conclusions, both as to appellant's negligence in placing its power line wires there and Willard Talkington's contributory negligence in going there, even though he be technically a trespasser as against the milling company, the owner of the warehouse.

Our decision in *Sweeten v. Pacific Power & Light Co.*, 88 Wash. 679, 153 Pac. 1054, we think, lends support to this conclusion, though that case may be differentiated somewhat from this case. The situation there involved was as follows: The light company's highly charged power line passed along a public alley about twenty-seven feet from the ground, supported upon poles in the usual way. There was a cottonwood tree growing in the alley so that its branches came in contact with the power line wires and wore off the insulation. Boys were accustomed to play in the alley and about the tree, and also to climb the tree. The light company was regarded as being charged with knowledge of this fact. A boy climbing the tree in play came in contact with the wires, was injured, and the light company was held liable. It seems to have been the duty of the light company, under its ordinance, to cause its wires to be insulated. In holding the light company liable, Judge Ellis, speaking for the court, said:

"The appellant's negligence was established beyond a reasonable doubt. It permitted a highly charged wire, passing through a tree in a public alley where it knew children were wont to play, to become uninsulated and so remain for weeks and, as the evidence shows, possibly for years. It was not only charged with knowledge of the fact that the insulation was worn, since the undisputed evidence shows that any sort of inspection would develop that fact, but it also had actual notice of that fact and had been warned of the incident danger. It took no steps to remedy the situation."

While this court was not there deciding the question as a matter of law, this quotation from the opinion indicates its views of how conclusive the proof was showing the light company's negligence. It seems to us that this view of the court

touching the situation in that case is quite in harmony with, and lends support to, the view that the facts in this case are at least such as to make the question here presented one of fact for the jury to decide.

Counsel for appellant cite and place reliance upon the decision of this court in *Graves v. Washington Water Power Co.*, 44 Wash. 675, 87 Pac. 956, 11 L. R. A. (N. S.) 452. In that case a boy was injured by a highly charged electric wire of the company attached to the framework of a bridge some thirty-five feet above the ground. He was climbing up the latticed iron pier after some birds' nests which were up under the bridge above the wire. Coming in contact with the wire, he was injured by the electric current. While there is evidence in that case showing that boys had played to some extent around the foot of the bridge piers, apparently none had ever been known to climb up there. We also think it was somewhat more difficult for boys to climb up where the injured boy did climb than for boys to go upon the roof of this warehouse, and that it was somewhat more unlikely that boys would climb up the bridge pier than that they would go upon the roof of this warehouse to play.

In a note to *Temple v. McComb City Elec. Light & Power Co.*, 11 L. R. A. (N. S.) 449, the learned editors, having there collected and reviewed a number of decisions touching this question, observed:

"As to the duty to guard against danger to children in placing electric wires, no rule can be enunciated that would be accepted by all courts. As in the 'turntable' cases and those involving other 'attractive nuisances,' the authorities are in irreconcilable conflict. It would seem, however, that reason and humanity, alike, support the rule laid down in the above case, that those dealing with such an extremely dangerous agency as electricity should, in stringing their wires in places where it is reasonably probable that children will go, be charged 'with the very highest degree of skill and care' to protect the children from injury while in the vicinity of such places, even though they may be trespassers."

There are a great many decisions of the courts dealing with this question from which it could be well argued both that the situation here involved presents a question of law and that it presents a question of fact. We have carefully examined all of them cited by counsel for appellant and also others coming to our attention, and, as we view them, they all depend upon their own peculiar facts, and that it is next to impossible to formulate any general rule that can become a trustworthy guide in cases which are very close to the line between questions of law and fact, other than the rule that, to become a question of law, it must be one in the deciding of which all reasonable minds must necessarily agree. We cannot see our way clear to hold that this is such a case. We are of the opinion that the trial court correctly left the questions of defendant's negligence and of Willard Talkington's contributory negligence to the jury.

It is contended that the verdict is excessive to the extent of showing prejudice and passion on the part of the jury. We are unable to so decide from the record before us. Both of Willard Talkington's hands were severely burned, from which he suffered great pain for a period of some two months. The wounds required dressing by a physician forty-three times. Both hands were left deformed and their usefulness permanently impaired to a considerable extent. We cannot see the hands. They were exhibited to the court and the jury upon the trial, and the impairment of their use exhibited to the court and jury by his efforts at picking up and taking hold of articles.

Contentions made relative to instructions given and refused we think are not well founded. What we have already said, we think, answers these contentions.

The judgment is affirmed.

ELLIS, C. J., HOLCOMB, and FULLERTON, JJ., concur.