JAMES W. HOWARD, JR., by Next Friend, JAMES W. HOWARD, SR., Appellant, v. ST. JOSEPH TRANSMISSION COMPANY.

Division One, December 31, 1926.

1. **NEGLIGENCE: Attractive Nuisance: Uninsulated Electric Wires: Brackets Eight Feet from Ground.** Where the lower of two brackets or pegs, supporting the telephone signal wires, was eight feet and six inches from the ground, and there was no other appliance attached to the pole by which ascent could be facilitated, and children could not therefore have reached the lower bracket by extending their arms, the doctrine of attractive nuisance did not apply, and the electric company is not liable in damages to a nine-year-old boy, who fishing nearby, when his hook and line became entangled with the wires, and for the purpose of releasing them, climbed the pole to the lower bracket, and from it, by other brackets two feet apart, to high-power uninsulated wires thirteen feet from the ground, and was injured, on the theory that it negligently maintained, along a public highway and near a creek and trees, which was a resort for children and frequented by them as a place for swimming, fishing and play, an attractive environment and a dangerous pole which was attractive to children and an implied invitation to them to climb it.

2. ———: ———: ———: **Insurer of Safety.** An electrical transmission company is not an absolute insurer of the safety of children; if it lawfully erects its poles along a public highway, and uses the proper degree of care in placing its wires out of the reach of those who ordinarily would be in no possible danger of coming in contact with them, it is not liable in damages for injury to trespassing children who climb upon a pole upon which there is no step or ladder within eight and a half feet of the ground and thereby come in contact with dangerous wires at the top of the pole. A boy nine years old who attempts to climb upon an electric pole, the private property of the company and lawfully upon a public highway, at a place where he has no lawful right to be, is a trespasser; and if there is no step or ladder on the pole within his reach, and no invitation, express or implied, to him to climb it, the company is not liable for the injury which follows when he climbs to uninsulated electric wires at the top of the pole. The doctrine of attractive nuisance found in the turn-table cases cannot be extended to embrace such an injury.

---

Corpus Juris-Cyc. References: **Electricity,** 20 C. J., Section 35, p. 341, n. 68; Section 39, p. 348, n. 20; Section 40, p. 353, n. 63, 64; Section 59, p. 378, n. 88. **Master and Servant,** 39 C. J., Section 1200, p. 972, n. 88. **Negligence,** 29 Cyc., p. 465, n. 13, 19 New; p. 590, n. 82. **Pleading,** 31 Cyc., p. 333, n. 76.

Appeal from Holt Circuit Court.—*Hon. Guy B. Park,* Judge.

AFFIRMED.

*Shultz & Owen* for appellant.

(1) The pole and wires situated in the public highway within fifty feet of the swimming hole and place where children frequented for sport and play, constituted a dangerous instrument in an attrac-

tive environment. 20 R. C. L. p. 85, sec. 75; Zwidersich v. Minnesota Utilities Co., 193 N. W. (Minn.) 449; Hillerbrand v. Mercantile Co., 141 Mo. App. 132; Harris v. Elec. Light Co., 195 Mo. 628; Kribs v. Light Co., 199 S. W. (Mo. App.) 261; Williams v. Springfield Gas & Elec. Co., 274 Mo. 1; Thompson v. City of Slater, 193 S. W. 971; Godfrey v. K. C. Line Co., 299 Mo. 472. (2) It is negligence to place an unattractive dangerous instrument in or near an attractive environment. In Edwards v. Kansas City, 180 Pac. (Kan.) 271; Consolidated E. L. & P. Co. v. Healy, 70 Pac. (Kan.) 884; Costanza v. Pittsburg Coal Co., 119 Atl. 819; Caruso v. Troy Gas Co., 138 N. Y. Supp. 279; Union L. H. & P. Co. v. Lunsford, 225 S. W. (Ky.) 741; Robertson v. Light & Power Co., 176 N. Y. Supp. 281; Talkington v. Power Co., 165 Pac. (Wash.) 87; Beckwith v. City of Malden, 253 S. W. (Mo. App.) 17; McKiddy v. Des Moines Elec. Co., 206 N. W. 815. (3) A child has the right to play in the street and in climbing a pole is not a trespasser. Williams v. Gas & Elec. Co., 274 Mo. 1; Kribs v. Light Co., 19 L. R. A. (N. S.) 1154, note; Beckwith v. City of Malden, 253 S. W. (Mo. App.) 205. (4). It is not essential that defendant could have anticipated the very injury complained of or that it could have anticipated that it would have occurred in the exact manner in which it did occur. Harrison v. Kansas City, 195 Mo. 628; Smith v. Railroad, L. R. 6 C. 20; Woodson v. Railway Co., 224 Mo. 704; Graney v. Railroad Co., 140 Mo. 98; Phillips v. Railway Co., 211 Mo. 419; Greer v. Railway Co., 173 Mo. App. 276; Schaaf v. Basket & Box Co., 151 Mo. App. 48; Cooper v. North Coast Power Co., 244 Pac. (Ore.) 671. (5) The defendant should be held to anticipate the dangerous conditions that existed because of the use made of the environment where the accident occurred, just as it is required to anticipate the use that may be made of the highway. In one it must anticipate danger through contact with the fishing pole or rod or hook and line, or by climbing, in the other he must anticipate danger through contact with the high load or moving house or derrick. Blackburn v. Railway, 180 Mo. App. 548.

*Orestes Mitchell* and *W. H. Richards* for respondent.

(1) The plaintiff's petition fails to state a cause of action against the defendant, and the court properly sustained defendant's demurrer. State ex rel. Light & Power Co. v. Trimble, 285 S. W. 455; State ex rel. v. Ellison, 281 Mo. 667; Kelley v. Benas, 217 Mo. 13; Buddy v. Terminal Railroad, 276 Mo. 276; Rallo v. Construction Co., 291 Mo. 221; Meehan v. Elec. Light Co., 252 Mo. 625; Shaw v. Ry. Co., 184 S. W. 1151; Seymour v. Stock Yards & Transit Co., 224 Ill. 579; N. Y.-N. H. Railroad Co. v. Fruchter, 260 U. S. 141; May-

field W. & L. Co. v. Webb, 33 Ky. Law Rep. 909; Johnson v. Elec. Light Co., 78 Neb. 24, 17 L. R. A. (N. S.) 435; Charette v. L'Anse, 154 Mich. 304; Graves v. Water Power Co., 44 Wash. 675, 11 L. R. A. (N. S.) 452; Meyer v. Union Light, H. & P. Co., 151 Ky. 332, 43 L. R. A. (N. S.) 136; Trout v. Phil. Elec. Co., 236 Pa. 506, 42 L. R. A. (N. S.) 713. (2) The plaintiff was a trespasser the moment he left the road and climbed up on the property of the defendant, the pole in question. Mayfield Water & Light Co. v. Webb's Admr., 129 Ky. 395, 111 S. W. 712, 18 L. R. A. (N. S.) 179, 130 Am. St. 469; Carey v. Kansas City, 187 Mo. 715; Kelly v. Benas, 217 Mo. 13.

SEDDON, C.—Plaintiff, a minor, sues by next friend to recover the sum of $100,000 for personal injuries suffered by him and alleged to have been caused by defendant's negligence. The petition charges:

"Plaintiff, for amended cause of action, states that James W. A. Howard, Sr., is duly appointed next friend, for the purpose of prosecuting this suit; that the defendant herein is a corporation, duly incorporated and operating under the laws of the State of Missouri; that defendant, at all times herein, negligently operated and maintained a high-power electric service line, in a public highway; that said line consisted of three uninsulated electric wires, carrying a high voltage of electricity, to-wit, 11,000 volts, sufficient to cause death if allowed to pass through the human body; that said line was supported by poles about twelve inches in diameter, which were situated in and along a public highway and near the west line of the right of way of said highway, in Andrew County, Missouri, and near the town of Amazonia; that, at all times herein, there was a running stream of water that flowed in close proximity to the pole and line where the accident occurred, to-wit, about fifty feet; that there was no fence or barrier to mark the dividing line between the roadway and stream; that said running stream and the bank thereof and the public highway, at the point wherein the accident, hereinafter complained of, occurred, was a resort for children and boys of the village of Amazonia and of that locality, and was frequented by large numbers of the same, for the purpose of engaging in the sport of swimming, fishing and play; that the fishing was done with poles and rods and hooks and lines; that the children and boys in that locality drove and led cattle and horses to water in the stream and graze at said point, by way of said highway and across and under said wires; that one of said poles was located in the highway at the point where the accident occurred; that two large trees were located within close proximity to said pole and between it and the stream; that their branches extended over and among said wires; that said trees and poles, by reason of their environment and accessibility, were attractive to children and that they were likely to climb the same; that the

children and boys, in going to and from the creek at said point, passed under said electric wires, and while engaged in the sport of fishing and swimming and play, they were around and under and about said pole and wires and trees, in large numbers, at all hours of the day;

"That defendant negligently attached to said pole a signal, or telephone wire, composed of two wires; that said wires were negligently attached to the pole by two wooden brackets or pegs, the upper end of each bore a glass insulator; that the brackets were about twelve inches long, nailed to the pole; that defendant negligently placed one above the other, on the same side of the pole; that the lower bracket was negligently placed about eight feet and six inches from the ground; that the top of the second bracket was negligently placed about two feet and five inches from the base of the first bracket; that the top of the second bracket was negligently placed about two feet and two inches from a heavy two-pronged metal bar, attached to the pole, which bar supported the three high powered electric wires; that said bar, at the lowest point, was negligently placed about thirteen feet and one inch from the ground; that defendant was negligent in placing said wires and brackets and bar in such close proximity to the ground and to each other, thereby rendering them accessible and attractive to boys and children, and dangerous; that said place was rendered dangerous by reason of all the facts and negligent acts heretofore stated, for the reason that said fishing hooks and lines were likely to become entangled in said wires, so situated in defendant's pole; and the boys were likely to climb said pole for the purpose of releasing said hooks and lines.

"Plaintiff further states that by reason of the signal wire being attached to the pole by brackets, instead of cross-arms, and that said brackets were so situated that children could stand upon the same and reach the high voltage wires above, rendered said premises dangerous; that defendant was negligent in not maintaining some kind of a barrier or danger or warning sign, at the aforesaid place.

"That, by reason of all the facts, heretofore stated, and by reason of all the negligent acts, heretofore stated, defendant was negligent in maintaining, within the attractive environments aforesaid, said pole and electric wires and signal wire, for the reason that they rendered said place dangerous; that, by reason of all the facts and negligent acts, heretofore stated, and by reason of the location of said trees, said pole and wires were attractive to children and rendered said place dangerous, since they were likely to climb the same; that by reason of all the facts and negligent acts, as heretofore stated, said fishing poles and rods, while being used as aforesaid, or while being carried in going to and from said place, were likely to come in contact with said high voltage wires and thereby injure said children.

"Plaintiff states that all of the facts and negligent acts, as heretofore stated in this petition, were known to defendant or could have been known by the exercise of the highest degree of care, in time to have remedied same.

"That on or about the 5th day of July, 1922, the plaintiff, an infant of tender years, to-wit, nine years old, was at said point and environment; that he climbed said pole for the purpose of releasing a hook and line from said wires and, in doing so, came in contact with the deadly wires, aforesaid, and received into his body from said wires sufficient electricity to produce the injuries hereinafter described.

"Plaintiff states that he, at all times herein, was in the exercise of ordinary care and that he had no knowledge that said wires carried electricity.

"Plaintiff states that by reason of all the facts and negligent acts, heretofore stated, of the defendant, he received the following injuries, to-wit, his leg and arm were so injured and burned that it was necessary to amputate the same, to his damage, in the sum of one hundred thousand dollars.

"Wherefore, plaintiff prays damages in the sum of one hundred thousand dollars, and his costs herein expended."

The defendant filed a demurrer to the petition on the single ground "that said petition fails to set forth facts sufficient to constitute any cause of action against this defendant." The demurrer to the petition was taken up by the trial court, arguments heard thereon, and the court thereupon sustained the demurrer. Plaintiff refusing to plead further, the trial court entered a final judgment, dismissing plaintiff's petition and assessing the costs of the action against plaintiff. Plaintiff appeals to this court from the final judgment entered below.

Plaintiff bottoms his cause of action upon the so-called "attractive nuisance" doctrine, which has been the subject of much judicial dissertation and varying legal conclusions in this and other jurisdictions; or perhaps, to speak more accurately, plaintiff seeks recovery by extending or enlarging the "attractive nuisance" doctrine, or by engrafting on the jurisprudence of this State a new doctrine (which, however, although by variation, is still in fact, and may properly be so denominated, the "attractive nuisance" doctrine) based upon what appellant sees fit to term "an unattractive dangerous instrumentality in or near an attractive environment." But by whatever name or term the theory of recovery of plaintiff may be called, his theory of recovery, as expressed in the language of his petition, is clearly that "by reason of all the facts, heretofore stated, . . . defendant was negligent in maintaining, *within the attractive environments aforesaid*, said pole and electric wires and signal wire,

316 Mo.—21.

for the reason that they rendered said place dangerous; that, by reason of all the facts and negligent acts, heretofore stated, and by reason of the location of said trees, *said pole and wires were attractive to children and rendered said place dangerous,* since they were likely to climb the same.''

Counsel for respective parties herein, with commendable diligence, have ably and fully briefed their respective legal contentions,· and have cited practically all of the authorities, both of this and of foreign jurisdictions, bearing upon the legal question now before us. In so doing, they have, in one sense, greatly lightened our labors in arriving at what is the established law on the subject, as supported by the weight of judicial authority. We have read and attempted carefully to analyze, without a single exception, all of the many cases cited by respective counsel. It would unduly prolong this opinion beyond reasonable bounds were we to refer to, and comment upon, each and all of the many decisions and judicial rulings which counsel, by their industry, and only after extensive research, have discovered and cited in their respective briefs. We will, therefore, be content to refer to a few of the leading and well-reasoned authorities of this and other jurisdictions pertaining to the subject now before us.

The authorities most strongly supporting appellant's contention, viz., that his petition states a cause of actionable negligence against defendant, are Znidersich v. Minnesota Utilities Co., 155 Minn. 293, 193 N. W. 449; McKiddy v. Des Moines Electric Co., 206 N. W. 815; Edwards v. Kansas City, 104 Kan. 684, 180 Pac. 271; Consolidated Electric Light & Power Co. v. Healy, 70 Pac. 884; and Talkington v. Power Co., 96 Wash. 386, 165 Pac. 87; and yet, in our opinion, each of those authorities is readily distinguishable upon the facts from the case at bar. In the Znidersich case, a boy twelve years of age climbed a pole, placed and maintained in a public highway adjoining an unfenced tract of land used by children as a playground, upon the top of which pole were strung heavily charged uninsulated electric wires; the boy climbed the pole in order to release from the wires a kite which he had been flying, came in contact with the wires and was severely injured. The Supreme Court of Minnesota ruled that plaintiff was entitled to a recovery on the facts, but predicated its ruling upon the fact that the pole was equipped with iron pegs, driven into the sides of the pole, extending from near the ground to the cross-bars holding the wires in place, thus forming a permanent ladder upon which any person, minor or adult, might readily and easily ascend the pole, and thereby affording an implied invitation for the indulgence of the youthful habit of boys to climb whatever is within easy reach when at play. The ruling of the Iowa Supreme Court in the McKiddy case is likewise predicated upon the fact that

"at a point twenty-five feet up the pole were the convenient cross-arms, affording an opportunity for an inviting seat of observation, and upon the pole itself from a point eighteen inches above the ground, extending to the cross-arms, was a conveniently arranged ladder for no other apparent purpose than to enable a person to climb to the cross-arm; a jury could find that here was an 'implied invitation' to a child of tender years to experiment." So, in the Edwards case, the Kansas Supreme Court apparently bottoms its ruling upon the fact that the pole was equipped with steps, commencing about eighteen inches above the ground and about eighteen inches apart, and extending to the cross-arms, upon which were strung the heavily charged electric wires. In the Healy case, the ruling of the Kansas Supreme Court is predicated upon the fact that the charged electric wires were placed within easy reach and close proximity to a bridge or viaduct upon which children were wont to pass and loiter. In the Talkington case, a highly charged uninsulated electric wire extended from a pole to a bracket fifteen inches above the comb of the roof of a warehouse; next to the warehouse and adjoining the same was a lean-to, the top of which was only eight feet from the ground; the boys of the town were in the habit of climbing up the sides of box cars standing upon a track but a few inches away from the lean-to, stepping from the tops of the box cars onto the roof of the lean-to, and thence, by an easy ascent, climbing onto the roof of the warehouse, which had a slope of thirty-two degrees. Plaintiff's ward, a boy ten years of age, with other boys, had thus climbed onto the roof of the warehouse and had reached the comb of the roof, when, in order to steady himself, he took hold of the electric wires within his reach and was severely injured. The Supreme Court of Washington apparently based its ruling of defendant's liability upon "the fact of the tender age of Willard Talkington, the accessibility of this roof as a place for boys to play, the attractiveness of it as a place for boys to play, and the proximity to the roof of appellant's highly charged power line," from which facts, the court say: "We cannot escape the conclusion that there is room for reasonable minds to reach different conclusions both as to appellant's negligence in placing its power-line wires there and Willard Talkington's contributory negligence in going there." The evidentiary facts in other foreign decisions cited by appellant herein are closely similar to the evidentiary facts in the above analyzed cases.

Looking to plaintiff's petition in the case at bar for the evidentiary facts upon which he seeks to hold defendant liable, which facts, of course, must be taken as true for the purposes of the demurrer, we find that the uninsulated power line "was supported by poles about twelve inches in diameter" and "that defendant . . . attached to said pole a signal, or telephone wire, composed of two wires; that said

wires were negligently attached to the pole by two wooden brackets or pegs, the upper end of each bore a glass insulator; that the brackets were about twelve inches long, nailed to the pole; that defendant . . . placed one above the other, on the same side of the pole; that the lower bracket was . . . placed about eight feet and six inches from the ground; that the top of the second bracket was . . . placed about two feet and five inches from the base of the first bracket; that the top of the second bracket was . . . placed about two feet and two inches from a heavy two-pronged metal bar, attached to the pole, which bar supported the three high powered electric wires; that said bar, at the lowest point, was . . . placed about thirteen feet and one inch from the ground." It is apparent that there were no convenient pegs, or ladder, upon the sides or circumference of the pole, by which plaintiff could have readily or easily climbed to the metal bar, near the top of the pole, which supported the electric wires. The lower of the two brackets or pegs, supporting the telephone signal wires, was approximately eight feet above the surface of the ground, and it is obvious that a nine-year-old boy could not have reached with his extended arms the lower peg and thereby climbed to the top of the pole; the only way by which he could have ascended the pole was by "shinning" up the pole, at least to a point in the circumference where he could reach upwards with his arms and grasp the lower bracket or peg with his extended fingers. No appliance fastened to the pole could be reasonably deemed an implied invitation, even to a child of tender years, to climb the pole, and the charged and uninsulated electric wires were some thirteen feet, or more, above the surface of the ground, well beyond the reach of any person, adult or child, and endangering no one who was in a place of safety upon the ground. The evidentiary facts pleaded by plaintiff clearly distinguish the instant case from those cited by appellant.

Appellant places reliance upon Williams v. Gas & Electric Co., 274 Mo. 1, Godfrey v. Light & Power Co., 299 Mo. 472, ruled by this court, and Thompson v. City of Slater, 193 S. W. 971, Godfrey v. Light & Power Co., 247 S. W. 451, and Beckwith v. City of Malden, 253 S. W. 17, ruled by our several Courts of Appeals. In each of those cases, the child was injured while in a tree, not owned or controlled by the defendant, but through the limbs of which tree its electric wires passed. The apparent foundation of the rulings in those cases is that the defendant electric company is required to anticipate the presence of boys in trees through which its uninsulated wires pass, because of the natural and habitual instinct and proclivity of red-blooded, venturesome, growing boys to climb trees, and also that a boy is not a trespasser upon the property of the electric company while in the branches of a tree owned by a third party. It is

true that plaintiff herein pleads in his petition "that two large trees were located within close proximity to said pole and between it and the stream; that their branches extended over and among said wires; that said trees and pole, by reason of their environment and ac-cessibility, were attractive to children and that they were likely to climb the same," yet there is no causal connection whatever between plaintiff's injury and the fact that two large trees were in close proximity to the pole and that their branches extended over and among the wires fastened to the pole. Plaintiff does not charge that he was injured while climbing either of the trees, or while he was upon the branches of such tree, but he does charge "that he climbed *said pole* . . . and, *in doing so,* came in contact with the deadly wires," thereby receiving his grievous injuries.

Appellant also relies upon the ruling of the Kansas City Court of Appeals in Kribs v. Light, Heat & Power Co., 199 S. W. 261, where-in the decedent was crossing a pasture and came in contact with a cable, curled up in the weeds on the ground, which cable for some time prior to the casualty had lain, and was still lying, across a charged wire of an abandoned and unused power line. The facts clearly dif-ferentiate that case from the case at bar. In Harrison v. Electric Light Co., 195 Mo. 606, also cited by appellant, the branches of a tree in the yard of decedent extended over defendant's arc light wire, and, by reason of the movement of the tree branches by the wind, the insulation was rubbed off the wire from four to six inches. Decedent's son, a boy of experimental mind, climbed into the tree and tapped defendant's electric wire, when the current was off, with a copper wire, which he wrapped about the tree and ran down into the ground. There was a swing attached to the tree, the ropes of which were steel cables, and the loose end of one of the cables had been wrapped around the tree, so that it came in contact with the copper wire. After the electric current was turned on, the boy got an ax and chopped the copper wire in two about four feet from the ground. His father came out of the house, walked towards the swing, and before the boy could warn him of his danger, the father took hold of the cable rope of the swing and was instantly killed. The case was ruled under the doctrine of concurrent negligence, defendant's negligence in fail-ing to discover the cause of "trouble" on its line, after knowing thereof, and in turning on the current after it knew there was trouble, being deemed to have been the proximate cause of decedent's fatal injury.

Respondent insists that, upon the facts pleaded in the petition here-in, it was lawfully maintaining its pole and power line along the edge of the public highway; its poles were not equipped with steps or ladders; there was nothing about the pole to make it attractive and thereby lure a boy to climb the pole in play or in sport, or to offer an

invitation to any child to climb the same; that the pole was the private property of respondent, and the moment that plaintiff left the ground and began to ascend the pole, he became a trespasser on the property of respondent, where he had no lawful right to be and no invitation to be; that the wires upon the pole in no way endangered plaintiff so long as he remained on the ground, where he could not possibly have come in contact with, or even in close proximity to, the wires; and that the doctrine of "attractive nuisance," as recognized in the jurisprudence of this State and other jurisdictions, should not be extended or enlarged to apply to the pleaded facts in the instant case.

This court has very recently ruled (June 14, 1926), in an opinion delivered in Banc and concurred in by all of the judges of this court, that the "attractive nuisance" doctrine will not be extended beyond the so-called "turn-table" cases, wherein it had its inception in this country. [State ex rel. Kansas City Light & Power Co. v. Trimble, 315 Mo. 32.] That case was a proceeding by *certiorari* to quash, because of conflict of opinion with the rulings of this court, the majority opinion of the Kansas City Court of Appeals, and the judgment thereon, in the case of Miller, respondent, v. Kansas City Light & Power Company, appellant. It appears from the majority opinion of that court that the decedent, a boy fourteen years of age climbed a telephone pole on which the telephone company had placed steps, or wooden cleats, beginning about ten inches from the ground and alternating on the east and west sides of the pole up to a point about ten feet from the ground, where certain iron steps had been placed eighteen inches apart, extending upward as far as the telephone cables. At the very top of the pole and at a distance of four or five feet above the telephone cables, the Light & Power Company had attached a glass insulator carrying a single arc street lighting circuit wire, from which the insulation was missing. Decedent, in a spirit of youthful bravado, and apparently for the purpose of attracting the attention of certain girl friends, climbed the pole on Hallowe'en night and involuntarily grasped the live electric wire above his head to prevent falling when his foot slipped, thereby receiving fatal injuries. This court, quoting from the dissenting opinion of Judge TRIMBLE of the Court of Appeals, which dissenting opinion was unanimously adopted as the opinion of this court, said: "It would seem that unless the pole, as maintained, constituted an attractive nuisance or a lure to boys to climb it, the failure to keep the wire sufficiently insulated would not constitute negligence in this case or as to deceased, since the wire was twenty-two feet above ground and high out of reach, except, of course, to one having legitimate business up there. So that the question of defendant's liability in this case must depend upon whether the pole, as maintained, constituted an attractive nui-

sance, and upon the closely allied question of whether deceased was guilty of contributory negligence, and, at this state of the case, this last means whether he was guilty of such negligence as a matter of law. Now, there is no evidence in the record showing that the pole, as it existed, presented an attractive lure to boys to climb or play upon. . . . Our Supreme Court has refused to extend the 'attractive nuisance' doctrine beyond the turn-table cases. [State ex rel. v. Ellison, 281 Mo. 667; Buddy v. Union Term. Ry. Co., 276 Mo. 276; Kelly v. Benas, 217 Mo. 1.] And, as I view it, the pole in this case cannot be said to be an attractive nuisance or such as to lure children to play thereon within the meaning of that term as used in the turn-table cases. . . . Cases wherein wires were stretched close to trees which were easy to climb and which children did climb and play therein, do not seem to me to be in point, for it is well known that boys are fond of climbing trees and of playing therein; and in doing so they are not expecting to come in contact with a deadly wire. The facts in this case are wholly different. Again, if under the circumstances of this case, deceased is to be absolved of the charge of contributory negligence and defendant is to be held liable, then certainly defendant is an out-and-out and absolute insurer, and can be held liable·wherever wires are maintained at places where the activities of a boy past fourteen years of age make it possible for him to climb." We then add our own conclusion to the adopted opinion of Judge TRIMBLE, by saying: "On the question of extending the attractive nuisance doctrine, the majority opinion conflicts with our cases, duly cited by Judge TRIMBLE. On the doctrine of contributory negligence as a matter of law, the majority opinion likewise conflicts with those of our cases cited by Judge TRIMBLE. In fact, the plaintiff never had a case for submission to a jury."

In Kelly v. Benas, 217 Mo. l. c. 13, a nine-year-old boy, with other boys, engaged in flying a kite, climbed upon a shed eighteen inches from a pile of lumber belonging to defendants, and being warned of his danger, got down on the ground, when the lumber pile fell upon the boy and he was killed. The late Judge LAMM, speaking for this division of the court, then said in his usual apt and forceful style: "If the old channel of the law is to be quite changed by the application of the new doctrine automatically and without discrimination, if sentimental considerations (however elevated and tender) are to usurp the place of cold and calm reason as the foundation for rules of law, then the floodgate now damming back liability will be raised, letting in strange and deep waters for the landowner to struggle with. . . . Shall he fence against adventurous, trespassing boys? Almost as well suggest 'that he build a wall against birds.' . . . Michael was a trespasser. Defendants did not intentionally injure

him. They set no trap for him. Their lumber piles were not an attractive nuisance as defined in the turn-table cases.''

So, in State ex rel. v. Ellison, 281 Mo. l. c. 681, a case wherein a boy eight years of age fell from the top of a retaining wall in a city public park, a distance of nearly twenty feet to the ground, and was injured, we said, in Banc: ''This court has consistently refused to extend the turn-table doctrine. . . . For a full review of all the cases see the recent opinion of FARIS, J., in Buddy v. Union Terminal Ry. Co., 207 S. W. 821. . . . It is sufficient to say that the ruling of the Kansas City Court of Appeals in sustaining instruction three for plaintiff in the instant case, controverts the rule announced by this court in each of the three cases, supra. [Kelly v. Benas, 217 Mo. l. c. 13; O'Hara v. Gas Light Co., 244 Mo. l. c. 404; Buddy v. Terminal Ry. Co., 207 S. W. 821.] In other words, an enclosing wall of a tract of ground is not an attractive nuisance within the rule fixed by this court.''

In Buddy v. Terminal Railway Co., 276 Mo. 276, Judge FARIS, speaking for Division Two of this court, exhaustively reviews the cases of this and other jurisdictions pertaining to the ''attractive nuisance'' doctrine, and concludes: ''Ought then a doctrine resting, *firmly and beneficently, we concede, but solely,* upon the humane sentiment of putting humanity above property (Eddington v. Railroad, 57 L. R. A. 561), but otherwise ignoring legal landmarks and all other known and settled grounds of legal liability, be, absent legislation, further extended? We think not.'' (Italics are those of Judge FARIS.)

In Rallo v. Construction Co., 291 Mo. 221, wherein an eight-year-old child fell into an unfenced pond, where children were wont to play and swim, and was drowned, Judge D. E. BLAIR, speaking for this court, in Banc, said: ''Appellants rely on the doctrine of the turn-table cases. To hold defendants liable in this case would require us to extend this doctrine, and we have consistently refused to do this in this very sort of cases. [See State ex rel. v. Ellison, 281 Mo. l. c. 681; O'Hara v. Gas Light Co., 244 Mo. l. c. 405; Moran v. Pullman Co., 134 Mo. l. c. 651.] To the same effect is Hight v. Bakery Co., 168 Mo. App. 452.''

The refusal of this court to extend the ''attractive nuisance'' doctrine beyond the principle of the turn-table cases finds support in the rulings of other and foreign jurisdictions. The Supreme Court of the United States, in Railroad Company v. Fruchter, 260 U. S. 141, refused to extend the doctrine where a boy of eight years, by climbing to the topmost girder of a bridge used for carrying a public street across a railroad right-of-way, and thence up a latticed tower, touched a live electric wire thirty feet above the street and was injured. Said Mr. Justice McREYNOLDS, delivering the unanimous opinion of that

court: ''Considering the peculiar circumstances of the present cause, it is clear that if the plaintiff had been an adult he could not recover; and we are unable to find any sufficient evidence from which the jury could have properly concluded that the railroad company either directly or by implication invited or licensed him to climb upon the strut to a point from which he could touch the bare wire thirty feet above the street. The motion for an instructed verdict should have been granted." See, also, United Zinc & Chemical Company v. Britt, 258 U. S. 268, wherein a majority of the court ruled that the owner of unfenced land, who maintained thereon, within one hundred feet of a highway, a pool of water, apparently clear and pure, yet poisoned with sulphuric and other acids, into which water two trespassing children went, were poisoned and died, was not negligent in the premises, and therefore was not liable for the death of the children.

In Wetherby v. Gas & Electric Co., 83 Vt. 189, 75 Atl. 8, a railroad bridge, attached to which, by wooden arms, an electric company maintained light wires about two feet out and away from the structure, was used by the public for foot-travel and as a place to fish from, and from which to view the surrounding scenery; decedent, a thirteen-year-old boy, with other boys, was playing ''follow the leader'' on the bridge and came in contact with the charged electric wires, resulting in his death. Said that court: ''The business of transmitting electricity, while indispensable to society, must be conducted with a very high regard for the safety of the public, and the thoughtlessness, inexperience, lack of judgment, and misjudgment of children of tender years must be taken into account; but the courts cannot make electric companies insurers of the safety of children, more than of others, nor require of such companies in the circumstances of their business, a degree of care, prudence, and foresight beyond that which it is given to careful and prudent men to have and exercise in such or like circumstances."

In Water & Light Company v. Webb's Admr., 129 Ky. 395, 111 S. W. 712, a boy eleven years old either climbed an electric light pole, or walked up two parallel guy wires extending from the top of the pole to the ground at an angle of forty-five degrees, when his head touched the electric wire at the top of the pole, eighteen feet above ground, and he was instantly killed; the children of the neighborhood were accustomed to hold on to the upper guy wire with their hands and walk on the lower wire, and then slide down, thus using the guy wires to play upon, and decedent was presumably playing on the guy wires in this way when he met with his fatal injury. That court, in holding the defendant not chargeable with negligence under the facts, aptly remarked: ''In all the cases where a liability has been imposed for what is known as an attractive nuisance to children, the nuisance has been placed within their reach. We know of

no case where this has been applied to things put eighteen feet above the ground, which may only be reached by climbing a pole or walking up a wire. Such structures are not an invitation to children to use them. . . . The tendency of the more recent cases is to restrict, rather than enlarge, the application of the principle laid down in what are called Turn-table Cases, and to hold that the defendant is not liable unless he knows, or ought in the exercise of ordinary care to know, that his structure is alluring to children and endangers them. . . . As long as electric light wires are not put under ground, they must be put upon poles, and, where they are placed above the street as high as eighteen feet, the company should not be required to anticipate that children will climb up to the wires and get hurt. Guy wires are necessary on high poles at street corners where the line turns. A guy wire placed on a high pole to keep it in place, or some such contrivance, cannot well be dispensed with. Such a wire is not a dangerous instrumentality, attractive or alluring to children within the meaning of the Turn-table Cases. The little boy was a trespasser upon the defendant's wire, and, being a trespasser, he cannot complain that the premises were unsafe. Children, no less than adults, when they trespass upon the property of another, take the risk unless the circumstances bring the case within the principle of what is known as the Turn-table Cases, where a dangerous instrumentality is maintained, with knowledge, actual or constructive, that it is alluring to children and endangers them. A wire eighteen feet above the ground, which can only be reached as this wire was, cannot be said to fall within the exception to the general rule.''

In Graves v. Power Co., 44 Wash. 675, 87 Pac. 956, a boy was injured, while climbing (after birds' nests) up the steel lattice work of a high pier supporting a public bridge, by coming in contact with one of defendant's ''live'' electric wires, which were suspended thirty feet from the ground and eighteen inches from the pier. Said the court, in denying defendant's liability: ''Respondent urges that this bridge, and the piers thereof and immediate surroundings, and the presence of the pigeons, rendered the situation an attractive one for boys, and that the appellant was under obligations to keep its dangerous wires out of the reach of said boys, or to keep them so completely insulated that they would be harmless in case a boy should take hold of or come in contact with them. While attorneys for respondent assert, in their brief, that they do not rely upon the 'turntable doctrine,' it would seem that they invoke principles that are nearly akin thereto. . . . The things that constituted the attraction, which it is claimed drew him to this place, were features connected with the river, the bridge and the pigeons, and were matters for the existence of which appellant was not responsible. . . . The carrying of dangerous electric wires upon high poles, or the bury-

ing of them in trenches, readily occurs to one as an appropriate requisite for the safety of people who may have occasion to come into the vicinity of said wires. But if a boy, through curiosity, should dig up a wire buried in the ground, or should climb to the top of a high pole, and, in either case, take hold of a 'live' wire and be injured, would it be seriously contended that this was a circumstance which the owner of the wire should be held to have anticipated and guarded against? To be sure, it would be a possible contingency; but would it be so probable that any reasonably prudent person would .feel it necessary to be guarded against? . . . We do not think it can be said that this appellant should have anticipated that boys would climb up this almost perpendicular pier, and from it reach over and take hold of the electric wires strung upon its poles, thirty or more feet above the ground, or that the city's watchmen and other servants there stationed would permit such an occurrence. If the company's responsibility extended this far, it would be difficult to say where a limit could be fixed. In this State we see electric wires stretched on poles through our towns and cities, and along highways, through farms, orchards and forests in the country. Can it be held that companies operating these wires must keep them out of reaching distance of every high tree, building, fence, wall, pole, or other place of elevation into, or upon, which a boy may possibly be allured by birds' nests or other attractions. . . . Regardless of what the name may be, it seems to us that the contention of respondent is an invocation for an extension of the 'turn-table doctrine' beyond the limits permitted by the law, as heretofore announced by this and the great majority of the courts.''

In Trout v. Electric Co., 236 Pa. 506, 84 Atl. 967, a thirteen-year-old boy went upon the top of his father's house through a trap door, and from there over the house tops to another roof some four doors distant where he lay down on the tin cornice and threw a corncob, tied to the end of a string, over a charged electric wire, which was swinging a distance of four feet and six inches from the outside edge of the cornice, and pulled the wire toward him in order to detach his kite, which had been caught on the wire; when the wire came within reach, he touched it with one hand and immediately received the electrical shock which killed him. Said that court: ''The act of the boy in getting hold of the wire was wholly unrelated to any act of the defendant in connection therewith. Had the wire been so close to the house that the boy might naturally have come in contact with it while playing about the roof, it might be contended that its condition was the proximate cause of his death. But such was not the case; all of the defendant's wires were so far out from the house that they could not possibly have been reached by a full grown man, much less a boy of thirteen. The boy could have run and played all over

the roof without the possibility of his coming in contact with these wires. It was an original independent act of the deceased which could not reasonably have been anticipated that brought about this most sad accident, and this act was not induced by or did not follow as a natural sequence to any negligence of the defendant in connection with its wires. Under such circumstances there could be no recovery.''

See, also, Johnston v. Electric Light Co., 78 Neb. 24, where a boy climbed upon a fence four feet high and reached up and took hold of an electric light wire, and Myer v. Light, Heat & Power Co., 151 Ky. 332, where a boy climbed over a brick wall to get a baseball which had fallen inside an enclosed yard, coming in contact with an electric wire suspended over the yard, in both of which cases recovery was denied.

Were we to hold respondent liable for negligence under the pleaded facts in the instant case, it would mean that an electric company is an absolute insurer of the safety of children under almost every possible or conceivable circumstance, regardless of whether the company has used reasonable, or the very highest, care in placing its wires out of reach of those who would ordinarily be in no possible danger of coming in contact with them, and regardless of whether the child is injured solely by reason of being a trespasser upon the pole of the electric company, without being lured or invited upon the pole because of any of its attractive or convenient appliances or fixtures. Such a holding would be contrary to every sense of justice, fairness and right, and would be violative of the long-established principles of the law of negligence as announced in this, and the great majority of foreign jurisdictions. The mere fact of an accident and resultant injury does not, as a general rule, make out a prima-facie case of negligence. [39 C. J. 972; Fuchs v. St. Louis, 167 Mo. 620.] Regrettable as appellant's misfortune may be, and grievous as his injuries are, his misfortune was caused solely by his own negligence or heedless conduct, while he was a trespasser (nothing less) on respondent's pole, without any invitation, express or implied, to be there, and when he was in a place where he had no lawful right to be. Having repeatedly and decisively ruled that the ''attractive nuisance'' doctrine is not to be extended or enlarged beyond the principle of the turn-table cases, we cannot, under the pleaded facts of this case, find and hold the respondent to have been guilty of any actionable negligence, or, indeed, of any negligence whatever. Such being the established law of this State, appellant's petition does not set forth, or allege, facts sufficient to constitute any cause of action against defendant, and defendant's demurrer to the petition was rightly sustained. Plaintiff having stood upon the court's ruling on demurrer and having refused to plead further, it follows that the judgment

*nisi* was right and must accordingly be affirmed. .*Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur, except *Graves, J.,* absent.