JESSIE M. COX, Administratrix, Appellant, v. DES MOINES ELECTRIC LIGHT COMPANY et al., Appellees.

No. 39564.

932

*Holly & Holly* and *Harry Wifvat,* for appellant.

*Bradshaw, Schenk & Fowler* and *White & Clarke,* for appellees.

WAGNER, J.—On June 30, 1926, Howard V. Wilson, nine years of age, met his death by reason of coming in contact with, or in close proximity to, a wire charged with 6,600 volts of  electricity. The plaintiff, administratrix, brings this action to recover damages against the Electric Light Company and two of the employees of said company. At the close of the evidence, the court sustained the motion of defendants for a directed verdict, which challenges the sufficiency of the evidence upon the question of the negligence of the defendants. For the determination of this question, it will be necessary to refer somewhat in detail to the evidence.

Some years ago, the De Soto Brick & Tile Company began the operation of a brick and tile manufacturing plant in the town of De Soto. There was constructed upon the real estate owned and operated by said company a water tank, which is 16 feet in diameter and 10 feet 10 inches in height. This tank was constructed of hollow tile, each tile being 12 inches long, 5 inches wide, and 8 inches thick, and laid so that the 8-inch surface is exposed. The mortar between the layers is a little over a half inch thick. There was a sort of cornice at the upper edge of the wall, made by three tiers of brick, and arranged so that the lower tier extended outward beyond the upper row of hollow tile two or two and a half inches, and each of the two upper rows extended the same distance farther out from the row of brick immediately thereunder. The tank is in circular

form, and the outer surface is perpendicular from the ground up to the first row of brick hereinbefore mentioned. For the purpose of carrying away the excess water, an overflow pipe (argued by both parties to be 1¼ inch in diameter) was attached at the top of the tank, and extended down into the ground. The distance between the overflow pipe and the perpendicular wall of the tank is 8 inches. In 1920, the defendant Electric Light Company obtained the consent of the Brick & Tile Company to place on the top of said water tank two transformers: one for the purpose of "stepping down" the voltage for use in the Brick & Tile Company, and the other for the supply of electricity in the town of De Soto. These transformers were of standard construction, about 4 feet in height. Approaching the transformer from the line of the Light Company was a current of electricity of 6,600 voltage. At a point from 5½ to 6 feet from the ground, there are attached to the overflow pipe two small wires, in no way charged with electricity, which served as ground wires for the transformer installation. No claim is made that these wires were in any way accountable for the injury to the boy. For some time prior to the time of the injury, the Brick & Tile Company had ceased operation, and at the time in question, its property was in the possession of the state superintendent of banking. After the cessation of operations of the Brick & Tile Company, the transformer used for the supply of electrical current for said company was disconnected. In addition to the water tank, there were situated on the Brick & Tile Company's grounds an office, a main building, and other property, such as is usually convenient and necessary for the business of such a concern. There is an unimproved roadway which runs about 10 feet west of the aforesaid tank. There is a road running in the opposite direction south of the tank about 50 feet distant. From 6 to 10 feet from the tank there is a well, with a pump. Various parties procured water for family use at said well, and no objection to the same was ever made. At times, various boys played on the grounds of the Brick & Tile Company, with little cars on the tracks theretofore used, and "hide and go seek" in and around the buildings. In connection with the buildings thereon situated, wild pigeons and sparrows found a harboring place, and they and their nests became objects of interest to the boys. There was

no warning or danger sign relative to the high voltage of the electricity entering the transformer. Prior to the time in question, no child had ventured upon the tank into the place of danger. On the 30th day of June, 1926, his older brother was at the well near the tank, when this boy, then nine years of age, approached. In the top tier of the block construction, about a foot and a half from the overflow pipe, was a tile, which in some manner had been broken, and in it a sparrow had constructed its nest. The boy spied the nest and started to get it, seized the overflow pipe, and, either by shinning or by placing his feet against the wall, with his hands clasped to the pipe, made the ascent to the top of the tank, and then reached downward, in an effort to get the nest. His older brother said to him: "You better come down. You might fall off." The boy arose, and started in the direction of the pole carrying the heavily charged electrical current; and the back of his head, neck, and shoulders either came in contact with or in close proximity to the heavily charged wire, and as a result thereof, he met his immediate death, by electrocution. These are the important facts, as disclosed by the record.

The question presented by the court's ruling on the motion for a directed verdict in favor of the defendant is whether the evidence is sufficient to support a finding by the jury that the defendants, in the exercise of ordinary care, in the light of the surrounding circumstances, should have reasonably anticipated that a boy would probably climb the overflow pipe connected with the water tank (with no inviting or ready means of ascent), and expose himself to danger from contact with electric wires from 13 to 14 feet above the ground.

In its strictest sense, this is not an "attractive nuisance" case, although the factors which are given prominence in such cases are pertinent here.

Since the transformer and the electric line connected therewith, by permission of the Brick & Tile Company, were located upon its land, the boy, at the time in question, was not a trespasser,  in so far as the defendants are concerned. See *Lipovac v. Iowa R. & L. Co.*, 202 Iowa 517. Negligence is the doing of something which an ordinarily careful and prudent person, under the same circumstances, would not do,

or the failure to do something which an ordinarily careful and prudent person, under the same circumstances, would do. The care exercised by an ordinarily careful and prudent person is in proportion to the apparent danger involved. While one must exercise ordinary care in handling and controlling a dangerous agency or instrumentality, yet he is not an insurer as against injuries befalling others coming in contact therewith. If, under the circumstances of the case, one has no reason to believe or anticipate that another will probably come in contact with the dangerous agency, then he cannot be said to be guilty of negligence.

The appellant's contention is that the sparrow's nest was an attractive feature for the boyish instincts, and that the dangerous instrumentality was in close proximity, and that, because of the sparrow's nest, the defendant should reasonably have anticipated injury such as befell the boy at the time in question. There is no evidence of actual knowledge by the defendants of the sparrow's nest.

The counsel for the respective parties, with commendable diligence, have ably and fully briefed their respective contentions, and have cited many authorities in this and other jurisdictions, bearing upon the legal question presented. To analyze and comment upon the many authorities cited would constitute a volume.

Our latest pronouncement upon this proposition is *McKiddy v. Des Moines Elec. Co.*, 202 Iowa 225, wherein we declared that the application of the doctrine of the "attractive nuisance" cases will depend upon the particular facts of each case, and that no hard and fast rule of liability or nonliability can be fixed in this regard.

In support of her contention, appellant cites and relies upon the following cases: *Edgington v. Burlington, C. R. & N. R. Co.*, 116 Iowa 410; *McKiddy v. Des Moines Elec. Co.*, 202 Iowa 225; *Connell v. Keokuk Elec. R. & P. Co.*, 131 Iowa 622; *Consolidated Elec. L. & P. Co. v. Healy*, 65 Kan. 798 (70 Pac. 884); *Talkington v. Washington W. P. Co.*, 96 Wash. 386 (165 Pac. 87); *Stedwell v. City of Chicago*, 297 Ill. 486 (130 N. E. 729); *Oil Belt Power Co. v. Touchstone* (Tex. Civ. App.), 266 S. W. 432; *Hayes v. Southern Power Co.*, 95 S. C. 230 (78 S. E. 956); *Osborn v. Atchison, T. & S. F. R. Co.*, 86 Kan. 440

936

(121 Pac. 364); *Union Light, H. & P. Co. v. Lunsford*, 189 Ky. 785 (225 S. W. 741).

In the *Edgington* case, supra, we announced the doctrine of the "attractive nuisance" cases. In the *McKiddy* case, supra, we applied the doctrine of the "attractive nuisance" cases, in holding that the crossbar on the top of the electric light pole was an allurement to the childish and sportive instincts of a child, as affording an inviting seat of observation, and that the spikes driven in either side of the pole, from the ground to the cross-arm, constituted, in fact, a ladder, and formed convenient and inviting accessibility to the coveted seat on the cross-arm. There is no ladder formation in the instant case, and the cited case is clearly distinguishable.

In the *Connell* case, supra, the plaintiff was injured by coming in contact with an uninsulated wire strung over uninclosed property, which wire had been allowed to sag, so that the plaintiff easily came in contact therewith. It is clearly apparent that this case is not analogous to the instant case.

In *Consolidated Elec. Light Co. v. Healy*, 65 Kan. 798 (70 Pac. 884), the rule is predicated upon the fact that the charged electric wires were placed within easy reach and in close proximity to the bridge or viaduct upon which children were wont to pass and loiter.

In the *Talkington case*, 96 Wash. 386 (165 Pac. 87), a highly charged uninsulated electric wire extended from a pole to a bracket 15 inches above the comb of the roof of a warehouse. Next to the warehouse, and adjoining the same, was a lean-to, the top of which was 8 feet from the ground. The boys of the town were in the habit of climbing up the sides of box cars standing upon a track but a few inches away from the lean-to, stepping from the tops of the box cars onto the roof of the lean-to, and thence, by an easy ascent, climbing onto the roof of the warehouse, which had a slope of 32 degrees. Plaintiff's ward, a boy 10 years of age, had thus climbed onto the roof of the warehouse, and had reached the comb of the roof, when, in steadying himself, he took hold of the electric wires within his reach, and was severely injured. The court predicated its decision upon the easy accessibility to the roof from the box cars.

In *Stedwell v. City of Chicago*, 297 Ill. 486 (130 N. E. 729), the case bears a marked similarity to the *McKiddy* case,

supra. The wire which caused the injury to the child was 13 feet above the surface of the ground, and a latticework, constituting a ladder formation, afforded the means of accessibility to the place of danger.

In *Oil Belt Power Co. v. Touchstone* (Tex. Civ. App.), 266 S. W. 432, the place of danger was easily accessible by means of a ladder which had been previously attached to the structure by those in ·charge.

In *Hayes v. Southern Power Co.*, 95 S. C. 230 (78 S. E. 956), the boy was injured in the window of a transformer house. The school ground was in close proximity, and home base of a ball diamond was quite near the transformer house. In some manner, the boy climbed to the window, about 5 feet from the ground, and came in contact with a live wire, and was injured.

In *Osborn v. Atchison, T. & S. F. R. Co.*, 86 Kan. 440 (121 Pac. 364), a boy was injured while climbing a smokestack situated upon a building. The smokestack was reached by the boy by climbing up cleats upon a door attached to a sloping shed, which was connected with the building upon which the smokestack was located. The cleats upon the door and the sloping shed furnished ready and easy means of accessibility to the smokestack.

In *Union Light, H. & P. Co. v. Lunsford*, 189 Ky. 785 (225 S. W. 741), the boy had resorted to a pond, and was engaged in the shooting of frogs. The transformer house was on the ground about ten feet from the edge of the pond. A frog jumped from the pond and went into the power house, and was followed by the boy, who came in contact with a live wire three feet from the ground, which was easily accessible, by reason of the fact that one of the boards formerly inclosing the power house had been previously removed.

From this analysis of the foregoing cases, it is clearly apparent that they are not analogous to the facts in the instant case. In the case at bar, there are no steps or ladder formation,—nothing but an overflow pipe, eight inches from a perpendicular wall.

In numerous cases of a similar nature, the courts have held in accordance with the ruling of the trial court, in sustaining the motion for a directed verdict. We will content ourselves by a citation of the following authorities: *Mayfield W. & L.*

938

Co. v. Webb's Admr., 129 Ky. 395 (111 S. W. 712) ; O'Gara v. Philadelphia Elec. Co., 244 Pa. St. 156 (90 Atl. 529) ; Graves v. Washington W. P. Co., 44 Wash. 675 (87 Pac. 956) ; Howard v. St. Joseph Transmission Co., 316 Mo. 317 (289 S. W. 597) ; Reddy v. City of Watertown, 53 S. D. 347 (220 N. W. 851) ; Heller v. New York, N. H. & H. R. Co., 265 Fed. 192 (17 A. L. R. 823) ; Key West Elec. Co. v. Roberts, 81 Fla. 743 (89 So. 122) ; Wetherby's Admr. v. Twin State Gas Co., 83 Vt. 189 (75 Atl. 8) ; Keefe v. Narragansett Elec. L. Co., 21 R. I. 575 (43 Atl. 542) ; Sheffield Co. v. Morton, 161 Ala. 153 (49 So. 772) ; Grube v. Mayor of Baltimore, 132 Md. 355 (103 Atl. 948) ; Myer v. Union Light, H. & P. Co., 151 Ky. 332 (151 S. W. 941) ; Parker v. Charlotte Elec. R. Co., 169 N. C. 68 (85 S. E. 33) ; Devost v. Twin State Gas & Elec. Co., 79 N. H. 411 (109 Atl. 839) ; Blackstone v. Penn Cent. L. & P. Co., 249 Pa. St. 519 (95 Atl. 95) ; Minter v. San Diego Cons. G. & Elec. Co., 180 Cal. 723 (182 Pac. 749) ; Bonniwell v. Milwaukee L., H. & T. Co., 174 Wis. 1 (182 N. W. 468) ; Brown v. American Mfg. Co., 209 App. Div. 621 (205 N. Y. Supp. 331) ; Johnston v. New Omaha Thomson-Houston Elec. L. Co., 78 Neb. 24 (110 N. W. 711).

Also, see the following Iowa cases, as having some bearing upon the question : Davis v. Malvern L. & P. Co., 186 Iowa 884; Nelson v. Lake Mills Canning Co., 193 Iowa 1346; Hart v. Mason City B. & T. Co., 154 Iowa 741; Anderson v. Ft. Dodge, D. M. & S. R. Co., 150 Iowa 465.

As is well said in Graves v. Washington W. P. Co., 44 Wash. 675 (87 Pac. 956) :

"Ordinarily a person whose duty it is to furnish protection to others against a dangerous agency fully complies with the law when he provides such a protection as will safely guard against any contingency that is reasonably to be anticipated. He is not legally bound to safeguard against occurrences that cannot be reasonably expected or contemplated as likely to occur."

· This is the primary thought expressed in the authorities. In other words, due care consists in guarding, not against possibilities, but only against probabilities. We agree with the ruling of the trial court.

It is shown that Fred Macy, one of the defendants, an employee of the Light Company, about an hour after the accident, told one of the witnesses "there was a liability to the case." Such statement was not part of the *res gestae*, and not shown to have been made with authority. It could in no way be binding upon his employer or upon the other defendant. Moreover, it clearly appears that, if made, it is only the statement of a legal conclusion. The question of liability is a question to be determined by the court.

The accident is indeed regrettable, and naturally appeals to human sympathy; but we find no error, and the judgment of the trial court is hereby—*Affirmed.*

MORLING, C. J., and STEVENS, DE GRAFF, and ALBERT, JJ., concur.